*So ordered.*

---

### ED IRVING *vs.* THE GOODIMATE CO.

Bristol.   October 28, 1946. — November 29, 1946.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Frauds, Statute of. Contract,* Of employment, What constitutes, Performance and breach. *Letter. Evidence,* Relevancy and materiality. *Practice, Civil,* Exceptions: general exception; Discretionary control of evidence; Requests, rulings and instructions. *Damages,* For breach of contract. *Words,* "Signed."

A finding of breach by an employer of a contract of employment of a salesman for a certain period at a rate of commission on sales higher than he had previously received was warranted by evidence that before the end of the specified period the salesman ceased to continue in the employment because of the employer's refusal to pay the increase in commission on any of the sales made by the salesman during such period.

A letter written by an employer to his salesman in 1939, referring to "the . . . commission we spoke about" and stating that "for 1940 and after we will give you" a higher rate of commission, and a letter from the employer to the salesman in 1940, which stated that it was "to confirm the talk we had" and that "at once and for the coming year" the salesman was to cover certain additional territory and to "receive full credit" for it, were, within the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fifth, memoranda sufficiently stating the essentials of an oral contract of employment for 1940 and 1941 at the higher rate of commission.

Evidence warranted a finding that a letter on the letterhead of a corporation, having at its end the name of the corporation in typewriting, without a written signature, and in its lower left hand corner the initials of an officer of the corporation, was by authority of the corporation written by such officer and by him signed with the typewritten signature as its signature; and upon such a finding the letter would be "signed by" the corporation within the statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fifth.

Letters of a corporation, signed only with its typewritten name in April, 1941, in the circumstances were competent to show the manner in which it sometimes signed letters as bearing upon the genuineness of another letter, similarly signed in October, 1939, which was material to the issues involved.

A general exception to the admission of evidence must be overruled if the evidence was competent for any purpose.

The order of proof at a trial lies in the discretion of the trial judge.

In an action by a former employee of the defendant for wrongful termination of the employment, evidence as to what the plaintiff would have earned during the remainder of the period of employment specified in the contract of employment if the employment had not been wrongly terminated by the defendant and also as to the plaintiff's efforts to secure work during the remainder of that period, was competent on the issue of damages even though it related to events occurring after the commencement of the action.

There was no error in the refusal of a request for ruling based on an assumption of a finding of certain stated facts favorable to the requesting party on a material issue, without mention of facts which bore on the same issue and which also could have been found on the evidence and were unfavorable to the requesting party.

CONTRACT. Writ in the Superior Court dated May 14, 1941.

The action was tried before *Warner*, J.

*J. Saklad*, (*H. J. Levi* with him,) for the defendant.

*S. Abrams*, (*W. J. Good* with him,) for the plaintiff.

RONAN, J. The plaintiff, a salesman, who had been employed by the defendant, a manufacturer of clothing, for several years prior to May, 1941, had a verdict upon the

first count of his declaration for a balance alleged to be due for commissions earned in 1940, upon the second count for commissions earned during 1941 before May, 1941, and upon the third count for damages for breach of his contract of employment. The defendant excepted to the denial of a motion for a directed verdict on each count, to the admission of evidence, and to the refusal to grant three requests for instructions to the jury.

There was evidence that the plaintiff last entered the employment of the defendant in 1935, selling clothing in Massachusetts, Rhode Island and Connecticut, for which he received a commission of four per cent on all sales made by the defendant to buyers in this territory. In April, 1938, Rubin Lipsky, the president and general manager of the defendant, who was authorized to hire and discharge employees, suggested to the plaintiff that he move his residence from Philadelphia, Pennsylvania, to Boston in order to be better able to serve the defendant's customers who were located in these three States. The plaintiff replied that he would be willing to move to Boston if his commission were increased to five per cent, and Lipsky agreed to pay this rate after the plaintiff had resided for a year in Boston. The plaintiff established his residence in Boston. He saw Lipsky in 1939 at the defendant's factory in Philadelphia and requested a definite understanding with reference to the increase of his commission, but Lipsky went out and the plaintiff, after waiting two hours for Lipsky to return, left for Boston. A few days thereafter, he received from Lipsky a letter dated October 18, 1939, which was upon the letterhead of the defendant. After apologizing for not seeing the plaintiff before he left the factory and referring to the fact that the plaintiff was seventh on the list of salesmen in the amount of sales, the letter continued: "Regarding the 5% commission we spoke about — here is what we agree to do. You go along as you have on 4% and for 1940 and after we will give you an additional 1% on all shipments that go to the territory you cover. You will get the 1% at the end of the year or every six months, whatever you wish." This letter bore no other signature than the typewritten words

"The Goodimate Company." It also bore the symbol "RL/s" in the lower left hand corner of the page, where the initials of the one dictating and the one typing the letter are usually found. The plaintiff talked with Lipsky a few days after the receipt of this letter, and accepted the offer. The latter again apologized for keeping the plaintiff waiting at the factory, and stated "that, now he had satisfied the plaintiff, the plaintiff should just go ahead and do his day's work."

Isadore A. Lipsky, the defendant's secretary and treasurer, who was in charge of shipping and distributing the defendant's goods, told the plaintiff that he was going to extend the plaintiff's territory by including Maine and New Hampshire. The plaintiff received by mail a letter dated November 4, 1940, upon the defendant's stationery, which stated that "This is to confirm the talk we had. Starting at once and for the coming year you are to cover the following states in addition to your present territory Maine New Hampshire. You will receive full credit for all business coming from the additional territory just as soon as we receive a first order from the new territory." The only signature on this letter consisted of the type-written words "The Goodimate Company." These words appeared at the end of the letter. In the lower left hand corner was the symbol "IAL:B." After the receipt of this letter the plaintiff continued as a salesman in the territory as extended, and was paid compensation upon the sales that he made until April, 1941. The plaintiff began in March, 1941, to insist upon the payment of the additional one per cent upon his commissions earned since January 1, 1940. The defendant neglected to pay this increase. The jury could find that the plaintiff ceased to continue in the defendant's employment about the first of May, 1941, because of the defendant's failure to pay this increase, although the defendant had reserved fifteen hundred suits and two thousand overcoats for sale by the plaintiff during the remainder of 1941, "which . . . [was] as much as . . . [the plaintiff] had sold the previous seasons." The evidence was sufficient to prove that, although the defendant

had agreed to pay the plaintiff a commission of five per cent, it had refused to do so, and that the plaintiff was entitled to receive his commission at this rate for goods he had sold and also damages for breach of contract for his loss of earnings during that portion of 1941 which was subsequent to the breach. *Dalton* v. *American Ammonia Co.* 236 Mass. 105. *Lane* v. *Epinard,* 318 Mass. 664.

The defendant pleaded the statute of frauds, and contends that there was error in admitting the two letters of October 18, 1939, and November 4, 1940, because both were insufficient to prove the oral contract upon which the plaintiff relied and because neither letter was signed by the defendant.

The plaintiff's contract of employment was for more than a year and was unenforceable unless evidenced by a written memorandum containing the essentials of the oral contract. *Williams* v. *Pittsfield Lime & Stone Co.* 258 Mass. 65. *Allen* v. *Williams Motor Sales Co.* 277 Mass. 295. *Nickerson* v. *President & Fellows of Harvard College,* 298 Mass. 484. *Beaver* v. *Raytheon Manuf. Co.* 299 Mass. 218. The first letter continued the existing employment of the plaintiff for 1940 and after, at an increased compensation. The second letter extended his employment through 1941, at the same time extending his territory. Both letters could be found to be confirmations of the existing oral contract of employment and to contain all the essentials of the contract. *Hurley* v. *Brown,* 98 Mass. 545. *Mead* v. *Parker,* 115 Mass. 413. *Lee* v. *Butler,* 167 Mass. 426. *Harrigan* v. *Dodge,* 200 Mass. 357. *Nickerson* v. *Bridges,* 216 Mass. 416. *Cousbelis* v. *Alexander,* 315 Mass. 729.

The statute of frauds, G. L. (Ter. Ed.) c. 259, § 1, Fifth, requires the memorandum to be "signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." One executing a document usually does so by signing his own name or, if he is unable to write, by making a mark, generally in the form of a cross. The words "written signature" in a statute requiring such a signature are to be construed to mean that the signature "shall always be his own handwriting or, if he is unable to

write, his mark." G. L. (Ter. Ed.) c. 4, § 7, Thirty-eighth. The statute of frauds, however, does not provide that the memorandum be executed by the written signature of the party to be charged, and the distinction between a signing and a written signature has been pointed out with many illustrations in *Finnegan* v. *Lucy,* 157 Mass. 439. See also *Assessors of Boston* v. *Neal,* 311 Mass. 192, 197–200.

A memorandum is signed in accordance with the statute of frauds if it is signed by the person to be charged, in his own name, or by his initials, or by his Christian name alone, or by a printed, stamped or typewritten signature, if in signing in any of these methods he intended to authenticate the paper as his act. *Hawkins* v. *Chace,* 19 Pick. 502. *Sanborn* v. *Flagler,* 9 Allen, 474. *Walker* v. *Walker,* 175 Mass. 349. *Weiner* v. *Mullaney,* 59 Cal. App. (2d) 620. *Deep River National Bank's Appeal,* 73 Conn. 341. *Prairie State Grain & Elevator Co.* v. *Wrede,* 217 Ill. App. 407. *Cummings* v. *Landes,* 140 Iowa, 80. *Pontrich* v. *Neimann,* 208 Ky. 715. *Drury* v. *Young,* 58 Md. 546. *Grieb* v. *Cole,* 60 Mich. 397. *Herrick* v. *Morrill,* 37 Minn. 250. *Cohen* v. *Arthur Walker & Co. Inc.* 192 N. Y. Sup. 228. *Garton Toy Co.* v. *Buswell Lumber & Manuf. Co.* 150 Wis. 341. Am. Law Inst. Restatement: Contracts, § 210. 159 Am. L. R. 253.

The nature of the contents of those letters which were typed upon the defendant's stationery, the conversations which preceded them between the plaintiff and the officials of the defendant whose initials appeared upon them, the facts that copies of the letters were in the defendant's files and that some correspondence of the defendant was merely signed in the typewritten name of the defendant, and the subsequent conduct of the parties with reference to the subject matter mentioned in the letters, presented issues of fact whether the first was written by Rubin Lipsky and the second by Isadore A. Lipsky in behalf of the company, whether the typewritten signatures were directed by them to be put upon the letters as the signature of the defendant, and whether they had authority to do so or their acts were ratified by the defendant. There was no error in admitting both letters in evidence. *Connecticut* v. *Bradish,* 14 Mass.

296. *Taylor-Wharton Iron & Steel Co.* v. *Earnshaw,* 259 Mass. 554. *Chaplin* v. *Sullivan,* 67 Cal. App. (2d) 728. *People* v. *Adams,* 162 Mich. 371. *People* v. *Dunbar Contracting Co.* 215 N. Y. 416, 423. *Commonwealth* v. *Nolly,* 290 Penn. St. 271. *Poole* v. *Beller,* 104 W. Va. 547. 131 Am. L. R. 301.

The plaintiff testified that the defendant did not sign its letters to him in any particular way. A letter dated April 9, 1941, and another dated April 14, 1941, each bearing the typewritten signature of the defendant, were introduced in evidence over the exceptions of the defendant. The plaintiff testified that he transacted business with the defendant concerning the matters mentioned in each of these letters. These letters were competent to show the manner in which the defendant had sometimes signed its letters as bearing upon the question whether the letters of October 18, 1939, and of November 4, 1940, were genuine letters of the defendant. They also served to contradict the testimony subsequently introduced by one Levine, the defendant's office manager, that only letters relating to routine matters were signed by the typewritten name of the defendant, and the testimony of Rubin Lipsky and Isadore A. Lipsky that they did not dictate or send the two letters last mentioned. The evidence was also admissible to meet the contention of the defendant that the letters of October 18, 1939, and November 4, 1940, were prepared by the plaintiff, who had access to the defendant's stationery and files. We need not decide whether the evidence was also properly admitted upon other grounds. The exceptions to the admission of the letters written in 1941 were general, and the exceptions must be overruled if the letters were competent for any purpose. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 581. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 385. *Stitt* v. *Tribe,* 270 Mass. 204, 206. Even if the judge could have delayed the admission of this evidence until later in the trial, he was not required to do so; and the objection to its admission became really an objection to the order of proof, a matter that was within the discretion of the judge. *Karjavainen* v. *Buswell,* 289 Mass. 419,

430.  *McGeorge* v. *Grand Realty Trust, Inc.* 316 Mass. 373, 377.

We consider only the rulings on evidence to which the defendant excepted at the trial.  The only other such exceptions open are to the admission of evidence relative to the efforts of the plaintiff to secure work during 1941 subsequent to the breach by the defendant of its contract with the plaintiff and what he would have earned during this time if there had been no breach of the contract.  All this evidence was properly admitted even if it related to events occurring after the commencement of the present action. *Cutter* v. *Gillette*, 163 Mass. 95, 97.  *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1.  *Gray* v. *Boston Elevated Railway*, 215 Mass. 143.  *Levine* v. *Lawrence & Co. Inc.* 305 Mass. 210.

The judge properly refused to grant the seventh request that the plaintiff could not recover damages arising from a breach of the contract and sustained during 1941 in an action brought before the expiration of that year.  The request was incorrect in law and contrary to the principles enunciated in the cases last cited.  The refusal to grant the eighth request [1] was not error.  This request was a mere grouping of facts favorable to the defendant without any mention of facts, adverse to the defendant's contention, which the jury could find upon the evidence relating to the same issue.  *Gregory* v. *Maine Central Railroad*, 317 Mass. 636, 641.  The charge covered the matter contained in the ninth request in so far as the defendant was entitled to it.

*Exceptions overruled.*

---

[1] The eighth request read as follows: "8. If upon all the evidence, the jury should find that the defendant entered into a contract to employ the plaintiff for the year 1941 and that the plaintiff refused to continue in said employment unless the defendant paid him an additional commission of one per cent of his 1940 sales and his sales for the first four months of 1941, the plaintiff cannot recover in this action for any loss of employment subsequent to such refusal." — REPORTER.