EDWARD E. YAGGY, JR. v. THE B.V.D. COMPANY, INC. AND MONTVALE REALTY CORP.

No. 7015SC9

(Filed 6 May 1970)

1. **Frauds, Statute of § 3—    pleading the statute — general denial of contract**

In this action for specific performance of an alleged contract to convey land, defendant's general denial of the alleged contract invoked the statute of frauds as effectively as if it had been expressly pleaded and thereby

imposed upon plaintiff the burden of showing a written contract sufficient to comply with its requirements.

**2. Frauds, Statute of § 3;   Trial § 15— evidence of oral contract — failure to object**

Failure to object to testimony as to an oral contract does not waive the defense of the statute of frauds.

**3. Signatures— definition**

The signing of a paper writing or instrument is the affixing of one's name thereto with the purpose or intent to identify the paper or instrument or to give it effect as one's own act.

**4. Frauds, Statute of § 2;   Vendor and Purchaser § 1;   Signatures— printed name on telegram — signature within statute of frauds**

In this action for specific performance of an alleged contract to convey land wherein the only written evidence of the contract is a telegram, defendant's name affixed to the telegram in print constitutes a signing of the telegram by defendant within the requirement of the statute of frauds.

**5. Frauds, Statute of § 7;   Vendor and Purchaser § 3— contract to convey land — sufficiency of description — patent ambiguity — extrinsic evidence**

Description in a telegram referring to property to be conveyed as "BVD property in Carrboro NoCar subject to reacquisition from Montvale Realty Corp" is not patently ambiguous, notwithstanding the vendor holds interests in two distinct tracts in Carrboro, N. C., separated by streets of the town, since the reference to property "subject to reacquisition from Montvale" makes it possible to show by extrinsic evidence the exact property intended to be sold.

**6. Frauds, Statute of § 6;   Vendor and Purchaser § 3— sufficiency of description of land**

A written memorandum sufficient to comply with the requirements of the statute of frauds must contain a description of the land either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers.

**7. Frauds, Statute of §§ 2, 7;   Vendor and Purchaser § 1— memorandum for sale of land — failure to state time for performance**

A memorandum of an agreement for the sale of land is not necessarily insufficient to satisfy the requirements of the statute of frauds because the time for performance is not stated therein, since the law will imply that it is to be performed within a reasonable time.

**8. Contracts § 2;   Vendor and Purchaser § 1— contract to convey land — meeting of the minds — telegram containing essentials of contract — subsequent negotiations for drafting detailed written document**

In this action for specific performance of a contract to convey land wherein a telegram sent by defendant accepting plaintiff's offer to purchase the property contained all the essential elements of the contract.

the fact that all the evidence shows that for some time after the telegram was sent the attorneys for the parties were engaged in drafting a written document which was to embody all of the terms agreed upon, including the date of closing and the date possession was to be delivered, and that this instrument was never signed, does not compel the conclusion that the minds of the parties had never met upon those features which were essential to form a binding contract.

9. **Frauds, Statute of § 2; Vendor and Purchaser § 1; Principal and Agent § 1— signature by agent — authority of agent**

The writing required by the statute of frauds may be signed by an agent, and the agent's authority to do so need not be in writing.

10. **Principal and Agent §§ 4, 5; Vendor and Purchaser § 5— contract to convey — authority of agent to accept offer to purchase**

In this action for specific performance of a contract to convey land, testimony by alleged agent of corporate defendant that he had actual authority from his superiors, including an executive vice president of defendant, to accept plaintiff's offer to purchase the property is competent to prove agency and the nature and extent of such agency.

11. **Vendor and Purchaser § 1; Corporations § 23— sale of corporate real property — approval of board of directors**

Contract for the sale of property by a corporation was not invalid because not approved by the corporation's board of directors, there being ample evidence from which the jury could find that the decision to sell the property had been reached at the highest levels of the corporate management, and that the sale to plaintiff by defendant's agent and a telegram confirming the sale, signed by the agent on behalf of the corporation, had been expressly authorized by the same top officials.

12. **Corporations § 23— sale of corporate real property — necessity for approval by board of directors — conduct of corporation**

While no officer or agent of a corporation has power, by virtue of his office alone, to sell or contract for the sale of corporate real property, the power of such an officer or agent to contract for the sale of corporate lands does not necessarily have to be conferred by a formal resolution of the board of directors but may, as in case of other power, be inferred from the conduct of the corporation in the transaction of its business and the power which the corporation has customarily permitted the officer or agent to exercise.

APPEAL by defendant, The B.V.D. Company, Inc., from *Thornburg, J.,* 9 June 1969 Civil Session of ORANGE Superior Court.

This is a civil action to obtain specific performance of a contract to convey land. Plaintiff alleged: Prior to 1 March 1966 defendant, The B.V.D. Company, Inc. (B.V.D.), which is a Delaware corporation doing business in North Carolina, owned the fee simple title to certain real property in Carrboro, N. C. On that date B.V.D. conveyed said property to the defendant, Montvale Realty Corp. (Mont-

vale), and on the same date by instrument recorded in the Orange
County Registry, Montvale leased the property to B.V.D. for a
period of 25 years. Under the lease B.V.D. has the right to repur-
chase the property from Montvale. On 18 July 1968 plaintiff offered
to purchase the property from B.V.D. for $250,000.00. On the same
date B.V.D. accepted plaintiff's offer and sent to plaintiff the follow-
ing telegram:

"ACCEPT OFFER OF $250,000 FOR BVD PROPERTY IN
CARRBORO NOCAR SUBJECT TO REACQUISITION
FROM MONTVALE REALTY CORP

= ALBERT D RADER    BVD COMPANY    INC"

At all times since 18 July 1968 plaintiff has been ready, willing and
able to perform the contract for purchase of the property and so
advised B.V.D., but on 21 August 1968 B.V.D. breached its contract
and advised plaintiff it would not convey the property to him. Since
that date B.V.D. has refused to comply with its contract.

By an exhibit attached to and made part of the complaint, plain-
tiff described the property which he contends is covered by the con-
tract to convey. In this exhibit, under the heading "Mill No. 1," two
tracts are described by metes and bounds descriptions. The "First
Tract" is located on the north side of Weaver Street and the east
side of Greensboro Street in the town of Carrboro. The "Second
Tract" is located at the corner of property of State University Rail-
road Company and would appear to be contiguous to the "First
Tract." Under the heading "Mill No. 2," one tract is described. This
tract is located on the south side of Main Street and on the east
side of Waco or Railroad Street, the description of this tract also
being by exact metes and bounds.

Defendants filed answer in which they admitted their corporate
status but denied all other material allegations in the complaint.

Plaintiff's witness E. J. Owens testified in substance as follows:
He is a realtor in Chapel Hill. In February 1968 Mr. Al Rader, who
he understands is in charge of B.V.D.'s real estate matters, came to
Chapel Hill and Owens and Rader visited the property. The B.V.D.
property in Carrboro consists of about 8.3 acres located on the north
side of Main Street in Carrboro, on which is a two-story building
containing 90 to 100,000 square feet of floor space. On the south
side of Main Street in Carrboro there is a 25-acre tract with a one-
story building containing about 50,000 square feet of floor space.
Owens and Rader looked at both facilities. Rader told Owens that
the reason for his visit to the South from New Jersey was to inspect
a plant in South Carolina, that this Carrboro, N. C. facility would

be moved to the South Carolina operation, and that B.V.D. wanted to sell it. The next contact Owens had with Rader concerning the property was about the first of March. Rader said he had met with his superiors and they had concluded that they wanted to sell the property for $300,000.00 net to B.V.D. Rader sent Owens a letter dated 9 May 1968 as follows:

> "This is to authorize you to sell the Carrboro property at a net price to the BVD Company, Inc. of $300,000. We would appreciate your full attention to this matter in view of the fact that we wish to dispose of this property.

> "Your cooperation is appreciated.

> > "Very truly yours,

> > "BVD COMPANY, INC.

> > "Albert D. Rader, Architect"

After unsuccessful negotiations with other prospective purchasers, Owens called Rader in Montvale, N. J., on 18 July 1968 and told him plaintiff was offering $250,000.00 for the B.V.D. property in Carrboro. Rader told Owens: "I think we have a deal, but let me talk with my superiors, and I will call you back." Rader called back in about 20 minutes and said, "We have a deal." Owens asked Rader to send him a wire or memorandum of their agreement and Rader sent Owens the wire set out in the complaint.

On cross-examination Owens testified that during the telephone conversation in which Rader had accepted the offer, Owens told Rader that he would have a memorandum of the offer drawn up, stating the date and time of closing, and would send him the memorandum accompanied by $25,000.00 good faith deposit; and that the $25,000.00 check was never transmitted to B.V.D.

Plaintiff testified that about 18 July 1968 he and Owens inspected the property in Carrboro owned by B.V.D., that he made a firm offer of $250,000.00 for the property and later received a copy of B.V.D.'s telegram confirming in writing their acceptance, and that he was prepared to pay the purchase price as soon as the deed could be provided.

Plaintiff then introduced testimony of Albert D. Rader taken on adverse examination. Rader testified in substance: He was employed by B.V.D. as corporate architect and had been involved in the disposal and purchase of properties by B.V.D. B.V.D. owns two parcels of land in Carrboro, N. C., separated by a road. The parcels consist of approximately 29 acres. A decision was reached in January 1968

to dispose of the Carrboro property, and he came to Carrboro on behalf of B.V.D. and authorized Owens to seek a purchaser for the property. On 18 July 1968 he received the phone call from Owens submitting the $250,000.00 offer. After receiving Owens's telephone call, he discussed the sale with Mr. Galston, Executive Vice-President of B.V.D., who agreed the offer should be accepted. He sent the acceptance telegram on behalf of B.V.D. after discussing the language of the telegram with the B.V.D. legal department. The legal department suggested the telegram contain the language "subject to reacquisition from Montvale Realty Corporation." The property that was being sold was all of the property that B.V.D. owned or leased in Carrboro, N. C., and is the property described in the lease from Montvale to B.V.D.

Plaintiff's witness Gordon Battle, an attorney in Chapel Hill, testified in substance: On 19 July 1968 he was employed to represent plaintiff in connection with examination of title and closing. He had several telephone conversations with an attorney in the legal department of B.V.D. as to the provisions to be included in the memorandum of the contract. He agreed to undertake preparation of the document. He mailed the proposed agreement to the B.V.D. attorney on 25 July 1968, and on 29 July the attorney called him and they discussed various revisions in the language. The B.V.D. attorney told him he would have to get approval from the chief counsel for B.V.D. on the language of the document. Battle had further telephone conversations with the B.V.D. attorney concerning the language of the document on 31 July and on 5, 13 and 19 August. On 19 August Battle talked by phone to the chief counsel of B.V.D., who was also Secretary of the corporation. In this conversation the B.V.D. chief counsel told him he was working on a presentation on the sale to be made to his Board of Directors which was meeting soon. In this phone conversation the B.V.D. chief counsel also inquired about the $25,000.00 check, and Battle informed him that he and the B.V.D. attorney had agreed that the $25,000.00 would be sent with the signed agreement as soon as the exact terms and language had been agreed to between them. On 21 August 1968 the B.V.D. chief counsel phoned Battle and said he had been working on his presentation to the Board of Directors and was unable to justify the sale to the Board. On the same date Battle received a telegram from B.V.D. stating the company could not enter into the contract.

Plaintiff introduced the lease from Montvale to B.V.D., which was recorded in the Orange County Registry. This lease provided that the lessee, if not in default, could elect to purchase the prop-

erty at a price determined by a formula in the lease. The parties stipulated that the property described in the lease is the same identical property as described in plaintiff's complaint and is all of the real property in which the defendants own any interest in Carrboro, N. C.

At the close of plaintiff's evidence, motions for nonsuit were overruled. Defendant B.V.D. offered evidence tending to show that Rader did not have authority to sign a contract on behalf of B.V.D.; that no one had authority to contract for the sale of real estate of the company without approval of the Board of Directors; and that the proposal to sell the B.V.D. property in Carrboro was never submitted to the Board of Directors. On cross-examination defendant's witness Rader testified that Mr. Galston, who was an Executive Vice-President of B.V.D., had sent him to Carrboro to get a sale of the property, and that Mr. Bidomi, who was also an Executive Vice-President of B.V.D., had also instructed him to seek the sale of the property. Rader also testified he had authority of his superiors to accept the offer. Rader testified B.V.D. owns or leases 47 plants, including the Carrboro plant, scattered all over the country. On cross-examination defendant's witnesses admitted that about three weeks after the telegram of 18 July 1968, B.V.D. went through an extensive change in management and adopted new policies which changed the plans of the corporation, and that at about the same time these changes occurred B.V.D. received a higher offer for the property. At the close of all the evidence, motion for nonsuit was allowed as to defendant Montvale and denied as to defendant B.V.D.

By agreement of counsel the case was submitted to the jury on the following single issue:

"Did the plaintiff, Edward E. Yaggy, Jr. and the defendant, The B.V.D. Company, Inc. enter into a contract for the sale of the B.V.D. property in Carrboro, North Carolina, as alleged in the Complaint?"

The jury answered the issue in the affirmative, and on this verdict judgment was entered decreeing specific performance, directing B.V.D. to take immediate steps to reacquire legal title to the property owned by Montvale in Carrboro, N. C., in accordance with the provisions of its lease, and thereafter to convey title to plaintiff upon payment of the $250,000.00 purchase price. From this judgment, defendant B.V.D. appealed.

*Bryant, Lipton, Bryant & Battle, by Victor S. Bryant, Jr., for plaintiff appellee.*

*Graham & Cheshire, by Lucius M. Cheshire and John T. Manning for defendant appellants.*

PARKER, J.

The North Carolina statute of frauds, G.S. 22-2, insofar as pertinent to this appeal, provides:

> "All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them, . . . shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized."

[1, 2]    Defendant appellant did not specially plead the statute of frauds but in its answer denied the alleged contract to convey. The general denial invoked the statute as effectively as if it had been expressly pleaded and thereby imposed upon plaintiff the burden of showing a written contract sufficient to comply with its requirements. *Hines v. Tripp,* 263 N.C. 470, 139 S.E. 2d 545; *Hunt v. Hunt,* 261 N.C. 437, 135 S.E. 2d 195; *Pickelsimer v. Pickelsimer,* 257 N.C. 696, 127 S.E. 2d 557; *Jamerson v. Logan,* 228 N.C. 540, 46 S.E. 2d 561. Moreover, defendant's failure to object to testimony as to an oral contract did not waive the defense of the statute. *Pickelsimer v. Pickelsimer, supra; Grantham v. Grantham,* 205 N.C. 363, 171 S.E. 331. "The protection of the statute extends not only to the performance of the contract, but to its discovery as well. [Citation.] To show a parol agreement, when a written one is required, is to fall short of the necessary proof." *Jamerson v. Logan, supra.*

[4]    The only evidence in writing of the contract which plaintiff seeks to enforce in this action is the telegram set out in the complaint. The telegram bears defendant's name in print, placed thereon by the same mechanical process employed by the telegraph company in reproducing other portions of the message. The question is presented whether a telegram to which the vendor's name has been so affixed may be considered as having been signed by the vendor within the meaning of our statute of frauds. We hold that it may.

[3]    "The signing of a paper-writing or instrument is the affixing of one's name thereto, with the purpose or intent to identify the paper or instrument, or to give it effect as one's act." *McCall v. Institute,* 189 N.C. 775, 128 S.E. 349. This is usually accomplished when a person affixes his name in his own handwriting, in such case the very act clearly evidencing the intent of the signer. Affixing one's handwritten signature, however, is not the only method by which a

paper writing may be considered as being signed within the meaning of the statute of frauds. As long ago as Lord Ellenborough's opinion in *Schneider v. Norris*, 2 M. & S. 286, 105 Eng. Rep. 388, decided in 1814, it has been recognized that a printed name may constitute a sufficient signing under the statute of frauds, provided that it is recognized by the party sought to be charged. The courts of this country have generally recognized the same principle. The Supreme Court of Arizona in *Bishop v. Norell*, 88 Ariz. 148, 353 P. 2d 1022, stated the rule as follows:

> "We are fully satisfied that the general rule is that a writing or memorandum is 'signed' in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper, namely, by writing, printing, lithographing, or other such mode, provided the same is done with the intention of signing. *City of Gary v. Russell*, 123 Ind. App. 609, 112 N.E. 2d 872; *Cummings v. Landes*, 140 Iowa 80, 117 N.W. 22; *Weiner v. Mullaney*, 59 Cal. App. 2d 620, 140 P. 2d 704; *Irving v. Goodimate Co.*, 320 Mass. 454, 70 N.E. 2d 414, 171 A.L.R. 326; *Potter v. Richardson*, 360 Mo. 661, 230 S.W. 2d 672; *In Re Deep River Nat. Bank*, 73 Conn. 341, 47 A. 675."

Other recent cases in which the typewritten name of the seller has been found to constitute a sufficient signing within the meaning of the statute are *Dubrowin v. Schremp*, 248 Md. 166, 235 A. 2d 722, and *Radke v. Brenon*, 271 Minn. 35, 134 N.W. 2d 887. The same rule has been adopted in the Restatement of the Law of Contracts, § 210, which provides:

> "The signature to a memorandum under the Statute may be written or printed and need not be subscribed at the foot of the memorandum, but must be made or adopted with the declared or apparent intent of authenticating the memorandum as that of the signer."

In *Joseph Denunzio Fruit Co. v. Crane*, 79 F. Supp. 117 (reversed on other grounds upon rehearing in 89 F. Supp. 962), a teletype message was recognized as "signed" by the party to be charged, within the meaning of the California statute of frauds, and in *Hefferman v. Keith* (Fla. Ct. of App. 1961), 127 So. 2d 903, the court answered defendant's contention that a telegram was not sufficient under the statute because it was not a signed copy, by pointing out that the defendant, having admitted the sending of the telegram, thereby admitted the authority of the telegraph company to affix his name thereto. See also 49 Am. Jur., Statute of Frauds, § 326.

**[4]** In the case presently before us no question has been raised as to the authenticity of the telegram or that it was sent by the witness Rader while purporting to act on behalf of defendant appellant. Under such circumstances we hold that, insofar as Rader's actions in the matter could be binding upon defendant, defendant appellant's name affixed to the telegram constituted a signing of the telegram by defendant within the requirement of the statute of frauds. Before discussing the question raised as to Rader's authority, it is necessary that we deal with certain other contentions made by the appellant.

**[5, 6]** Appellant contends that in any event the telegram fails to meet the requirements of the statute of frauds in that there is a patent ambiguity in the description of the property to be conveyed. In support of this contention appellant points out that it holds interests in two distinct tracts of land in Carrboro, N. C., separated by streets of the town, and from this appellant argues that it is impossible to know from the language of the telegram with certainty whether the parties were contracting with reference to one tract or the other or with reference to both. Had the description in the telegram consisted only of the words "BVD PROPERTY IN CARRBORO, NOCAR," there might be merit in appellant's contention. The telegram, however, is much more explicit. It refers to the "BVD PROPERTY IN CARRBORO NOCAR *SUBJECT TO REACQUISITION FROM MONTVALE REALTY CORP*" (emphasis added), and it is possible to ascertain with absolute certainty exactly what "BVD property in Carrboro" is "subject to reacquisition from Montvale." This is the property formerly owned by B.V.D., conveyed by it to Montvale, and which by recorded lease it has a right to reacquire from Montvale. The recorded lease describes by exact metes and bounds the property which is thus subject to the reacquisition rights. Therefore, in this case the public record itself discloses the exact property to which the telegram refers. The parties have stipulated that this is the same property as described in plaintiff's complaint. A written memorandum sufficient to comply with the requirements of the statute of frauds "must contain a description of the land, the subject-matter of the contract, either certain in itself or capable of being reduced to certainty by reference to something extrinsic to which the contract refers. . . . If the description is sufficiently definite for the court, with the aid of extrinsic evidence, to apply the description to the exact property intended to be sold, it is enough." *Lane v. Coe*, 262 N.C. 8, 136 S.E. 2d 269. In the case before us the reference to property "subject to reacquisition from Montvale" makes it possible to apply the description to the exact

property intended to be sold. It may well be that the words, "subject to reacquisition from Montvale," were inserted in the telegram for the purpose of protecting B.V.D. in event it should experience difficulties in reacquiring the property; they serve as well to identify exactly what property was intended.

**[7, 8]** Appellant also contends its motion for nonsuit should have been allowed because plaintiff's evidence disclosed that there was never a meeting of the minds of the parties, that the "offer" which appellant's telegram purported to accept was to be a written memorandum to be signed by the purchaser and accompanied by a good faith deposit of $25,000.00, and that these were never sent. While it is true that all of the evidence shows that for some time after the telegram was sent the attorneys for the parties were engaged in drafting a written document which was to embody all of the terms agreed upon, including such matters as the date of closing and the date possession of the property was to be delivered, and that this instrument was never signed, we do not agree that such evidence must compel a judgment of nonsuit. The statute of frauds does, of course, require that all essential elements of the contract be reduced to writing. The telegram in this case does clearly identify the vendor, the vendee, the purchase price, and, so we have held, the property sold. These are the essential elements of the contract. "A memorandum of an agreement for the sale of land is not necessarily insufficient to satisfy the requirements of the statute of frauds because the time for performance is not stated therein. In case of an executory contract of sale, where the time for the execution of the conveyance or transfer is not limited, the law implies that it is to be done within a reasonable time, and the failure to incorporate in the memorandum such a statement does not render it insufficient." 49 Am. Jur., Statute of Frauds, § 356, p. 667. The fact that in the present case the attorneys for the parties were engaged in drafting and were attempting to agree upon the language of an instrument which would spell out in detail not only the essential but also the subordinate features of the agreement, does not compel the conclusion that the minds of the parties had never met upon those features which were essential to form a binding contract. Upon all of the evidence in this case, whether the parties had a meeting of the minds on the terms of a valid contract was a question for the jury. The jury has answered the issue in favor of the plaintiff.

**[9, 10]** Finally, appellant questions Rader's authority to bind B.V.D. by the telegram of 18 July 1968. This is not a problem relating to the statute of frauds, since the statute expressly recognizes that the writing which it requires may be signed by an agent, and

it has long been established that the authority of the agent to do so need not be in writing. *Johnson v. Sikes,* 49 N.C. 70; 37 C.J.S., Frauds, Statute of, § 212, p. 706. Rader himself testified that he had actual authority from his superiors, including an Executive Vice-President of B.V.D., to accept plaintiff's offer. Such direct testimony by the agent is competent to prove agency, as well as to prove its nature and extent. *Sealy v. Insurance Co.,* 253 N.C. 774, 117 S.E. 2d 744.

**[11]**    We do not consider the contract for sale invalid because not approved by B.V.D.'s Board of Directors. There was ample evidence from which the jury could find that the decision had been reached at the highest levels of the B.V.D. corporate management to sell the Carrboro property, which was only one of many properties belonging to the corporation throughout the country; that this decision had been consistently adhered to for many months; that Rader, whose duties normally included dealing with corporate real properties, had been expressly authorized by top management officials to seek a sale of the property; that the sale to plaintiff and the telegram confirming it were expressly authorized by the same top officials; that before the telegram was sent its exact language was cleared with the corporation's legal department; that nothing in the negotiations leading up to sending the telegram or in the telegram itself suggested that the deal was being made conditioned upon obtaining a future approval of the B.V.D. Board of Directors; and that no mention of the need to obtain Board approval was made until after B.V.D. had received a higher offer for the property. Indeed, it is clear that it was not the Board of Directors, but the same top management officials who authorized making the contract with plaintiff, who decided to repudiate it.

**[12]**    While it is true that no officer or agent of a corporation has power, by virtue of his office alone, to sell or contract for the sale of corporate real property, "[n]evertheless, the power of a corporate officer or agent to contract for the sale of the corporate lands does not necessarily have to be conferred by a formal resolution of the board of directors, but may, as in case of other power, be inferred from the conduct of the corporation in the transaction of its business and the power which the corporation has customarily permitted the officer or agent to exercise." 19 Am. Jur. 2d, Corporations, § 1227, at p. 640. As stated by Barnhill, J., speaking for the Court in *Tuttle v. Building Corp.,* 228 N.C. 507, @ 512, 46 S.E. 2d 313, 317:

> "The rule limiting the authority of officers in respect to the sale of real property is not, however, inflexible. . . . In de-

termining whether the rule must be applied, the business in which the corporation is engaged, the duties necessary to be performed by its officers, the relation of the property dealt with to the business and to its other property, the surrounding circumstances and the principle that corporate officers have 'the implied power, in the absence of express limitations, to do all acts on behalf of the corporation that may be necessary or proper in performing' their duties must be considered."

Under all of the circumstances, Rader's authority to act on behalf of B.V.D. in sending the telegram was essentially a question of fact for the jury and they have answered under instruction free from prejudicial error.

We have also examined appellant's remaining assignments of error, and in the entire trial find

No error.

CAMPBELL and HEDRICK, JJ., concur.