NRC Golf Course, LLC v. JMR Golf, LLC, 2010 NCBC 20.

STATE OF NORTH CAROLINA

COUNTY OF CARTERET

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
09 CVS 1835

NRC GOLF COURSE, LLC,              )
                    Plaintiff      )
                                   )
           v.                      )        **OPINION AND ORDER**
                                   )
JMR GOLF, LLC; ROBERT B. HOBBS, JR., )
Trustee and THE BANK OF CURRITUCK, )
                    Defendants     )

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon (1) Plaintiff NRC Golf Course, LLC's ("NRC") Motion for Summary Against JMR Golf, LLC ("JMR") (the "Motion") pursuant to Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)"); (2) NRC's Motion for Summary Judgment Against the Bank of Currituck (the "Bank") (the "Bank Motion"), (3) NRC's Motion for Order Requiring Additional Security (the "Security Motion") and (4) JMR's Verified Motion for Civil Contempt Against Plaintiff NRC Golf Course, LLC and Brett Michaud (the "Contempt Motion").

THE COURT, after considering the above Motions, the briefs in support of and opposition to the Motions, the affidavits, other submissions of counsel and appropriate matters of record, as discussed *infra*, CONCLUDES that (1) NRC's Motion should be

DENIED, (2) summary judgment in favor of Defendant JMR should be GRANTED with regard to Plaintiff's claims stated in this civil action, (3) NRC's Bank Motion should be DENIED, (4) summary judgment in favor of Defendant Bank should be GRANTED with regard to Plaintiff's claims stated in this civil action, (5) NRC's Security Motion should be DENIED and (6) JMR's Contempt Motion should be DENIED as moot.

> *Vandeventer Black, LLP by Norman W. Shearin, Jr., Esq. and Christina Lollar, Esq. for Plaintiff NRC Golf Course, LLC.*
>
> *Williams Mullen by William D. Bayliss, Esq., Brian C. Vick, Esq. and Camden R. Webb, Esq. for Defendant JMR Golf, LLC.*
>
> *Smith Moore Leatherwood, LLP by James T. Gale, Esq. and Brett T. Hanna, Esq. for Defendant The Bank of Currituck.*
>
> *Hornthal, Riley, Ellis & Maland, LLP by L. Phillip Hornthal, III, Esq. and M. H. Hood Ellis, Esq. for Defendant Robert B. Hobbs.*

Jolly, Judge.

I.

PROCEDURAL BACKGROUND

[1]     On December 21, 2009, NRC filed this civil action, in which it seeks, *inter alia*, a declaratory judgment as to the respective rights and obligations of the parties under a Triple Net Lease Agreement (the "Lease Agreement") previously entered into between NRC and JMR.  The Lease Agreement arises from various business dealings between the parties and involves a lease agreement between JMR, as lessor, and NRC, as lessee, with regard to the North River Golf Course (the "Golf Course"), which is located in Carteret County, North Carolina.

[2]     Defendants JMR, the Bank and Robert B. Hobbs, Jr. ("Hobbs"), Trustee for the Bank, have answered timely and raised certain affirmative defenses.

[3]     On June 11, 2010, JMR filed a Motion for Affirmative Emergency Injunctive Relief to Require Monthly Payments ("Motion for Emergency Injunctive Relief") with regard to the Golf Course.

[4]     On July 22, 2010, the court entered an Order granting JMR's Motion for Emergency Injunctive Relief.  The Order directed NRC to either tender $99,996 for past due lease payments within five (5) days of entry of the Order or surrender possession of the Golf Course to JMR within thirty (30) days of entry of the Order.

[5]     On September 24, 2010, NRC filed the Bank Motion.

[6]     On September 28, 2010, NRC filed a Motion for Assistance in Surrender of Golf Course, requesting the court's guidance in surrendering the Golf Course.

[7]     On September 30, 2010, the court entered an Order (the "Transfer Order") to facilitate NRC's surrender of possession of the Golf Course to JMR.  Pursuant to the Transfer Order, NRC was directed to surrender possession of all Golf Course operating equipment to JMR upon surrender of the Golf Course, and JMR was to provide NRC with reasonable compensation for the use of such operating equipment, determined by the court upon resolution of the action.  NRC was also ordered to provide JMR with an accounting of all Golf Course operating equipment.  The Transfer Order did not affect the rights, obligations or liabilities of either NRC or JMR under any contract or agreement between or among NRC, JMR, the Bank, Hobbs or any third parties who may claim rights in the Golf Course or operating equipment.

[8]     On November 1, 2010, JMR filed the Contempt Motion against NRC.  In open court on November 18, 2010, JMR indicated that it intended to abandon the Contempt Motion, and it will be deemed WITHDRAWN.  Accordingly, the Contempt

Motion will be DENIED as moot.

[9]     On November 3, 2010, NRC filed the Security Motion.

[10]     On November 17, 2010, NRC filed its summary judgment Motion as to JMR.  On November 24, 2010, JMR filed its Memorandum in Response to NRC's Motion.  In its Memorandum, JMR opposes NRC's request for summary judgment and argues that the court should grant summary judgment in its favor on all of NRC's claims.[1]

[11]     All the Motions have been briefed and are ripe for determination.

[12]     Unless otherwise indicated herein, the material facts reflected in paragraphs 13 through 30, 42 and 58 of this Order exist, are undisputed[2] and are pertinent to the issues raised by the Motions.

## II.

## FACTUAL BACKGROUND

[13]     NRC is a limited liability company formed under the laws of the State of North Carolina.[3]  The sole member of NRC is Guide Group, LLC ("Guide Group").[4]

[14]     JMR is a limited liability company formed under the laws of the State of North Carolina.[5]  The sole member and manager of JMR is James M. Rose.[6]

[15]     The Bank is chartered in the State of North Carolina and maintains a

---

[1] Summary judgment may be entered in favor of the nonmoving party when the evidence establishes that there exist no disputed material issues of fact and that the nonmoving party is entitled to judgment in its favor as a matter of law.  Rule 56(c), *A-S-P Assocs. v. City of Raleigh*, 38 N.C. App. 271, 274 (1978), rev'd on other grounds, 298 N.C. 207 (1979).
[2] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56.  However, it is appropriate for a Rule 56 ruling to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138, 142 (1975).
[3] Compl. ¶ 1.
[4] *Id.*
[5] *Id.* ¶ 2.
[6] *Id.*

principal office in Currituck County, North Carolina.[7]

[16]    On or around July 18, 2006, Guide Group sold to JMR certain parcels of real property located in Carteret County.[8]  JMR currently owns all parcels of real property in Carteret County, on which the Golf Course is located.[9]

[17]    Following purchase by JMR of the Golf Course, JMR and NRC entered into the Lease Agreement, under which JMR leased the Golf Course to NRC for a monthly lease payment of $16,666.[10]  A Memorandum of Lease and Option was recorded on July 20, 2006.[11]

[18]    The initial term of the Lease Agreement began on August 1, 2006, to run through July 31, 2011.[12]

[19]    The Lease Agreement contains a clause entitled "Subordination of Lease," pursuant to which NRC agreed to subordinate its interest in the Golf Course to any deed of trust that was filed before or after the Lease Agreement was executed.[13]

[20]    As part of the Lease Agreement, JMR granted NRC an option to purchase the Golf Course for $2.5 million at any time during the term of the Lease Agreement ("Option A").[14]

[21]    Sometime in March 2007, NRC and JMR amended the Lease Agreement by entering into an amended option agreement ("Option B").  Pursuant to Option B, JMR granted NRC an option to purchase the Golf Course for a "fair market value at exercise date validated by an independent third-party appraisal" at any time during the

---

[7] *Id.* ¶ 5.
[8] *Id.* ¶ 9.
[9] *Id.*
[10] Sept. 20, 2010 Michaud Aff. Ex. B.
[11] *Id.* Ex. D.
[12] *Id.* Ex. B.
[13] *Id.*
[14] *Id..* ¶ 5, Ex. C.

term of the Lease Agreement.[15] Option B is substantially the same as Option A except for the "fair market value" purchase price for the Golf Course. There were no other amendments to the Lease Agreement.

[22]     Option B, upon which Plaintiff NRC relies as to each Defendant in this action, does not contain language with regard to subordination of NRC's interest in the Golf Course to any deed of trust filed before or after execution of the Lease Agreement. However, the Lease Agreement does contain the subordination language, as discussed, *supra*, and in that context contemplates the granting by JMR to NRC of an option to purchase the Golf Course.

[23]     The genesis of the Option B amendment was concern by accountants for Guide Group that Option A, as drafted, may not be adequate to achieve certain potential income tax loss treatment desired by Guide Group.[16]

[24]     NRC did not provide JMR with new or additional consideration with regard to execution of Option B.

[25]     Option B was not drafted by counsel and was not recorded.

[26]     The parties disagree over the enforceability of Option B.

[27]     In November 2007, JMR granted a Deed of Trust on the Golf Course (the "Deed of Trust") to Hobbs, as Trustee for the Bank, as collateral to secure an outstanding promissory note executed by Shallowbag Bay Club, LLC, with a face value

---

[15] *Id.* Ex. E.

[16] See Nov. 16, 2010 Michaud Aff. ¶ 12, Rose Aff. ¶¶ 14-15. While the parties' motivation for executing the Option B amendment is not relevant to the contractual construction issues before the court, it is instructive in placing the amendment in context. In light of the court's ruling reflected in this Opinion and Order, analysis of the parties' respective contentions with regard to whether the reasons for the amendment are relevant on the issue of whether there existed sufficient consideration to support Option B is not necessary.

of $1.5 million (the "Promissory Note").[17]  The Deed of Trust was recorded on November 13, 2007.[18]

[28]     On or about October 28, 2009, NRC purported to exercise Option B and purchase the Golf Course from JMR for a purchase price of $750,000.[19]  NRC contends that Option B is enforceable and that $750,000 is the fair market value of the Golf Course, based on an appraisal prepared by Hotel & Club Associates, Inc. on or about October 26, 2009.[20]

[29]     On November 20, 2009, JMR declined to sell the Golf Course to NRC pursuant to Option B.[21]

[30]     The parties now seek clarification on their respective rights under the Lease Agreement with regard to the validity of Option B.

III.

THE PARTIES' CONTENTIONS

[31]     NRC contends that as a matter of law Option B is a valid, enforceable contract.  It argues that the court should grant specific performance and order JMR to convey fee simple, marketable title to the Golf Course, free of encumbrances, for a purchase price of $750,000.[22]

[32]     NRC argues in the alternative that if the court concludes that Option B is invalid, it is nevertheless enforceable because JMR is equitably estopped from denying

---

[17] Compl. ¶ 14.
[18] *Id.*
[19] *Id.* ¶ 15.
[20] *Id.*
[21] *Id.* ¶ 16.
[22] Pl's. Mem. Supp. Mot. Summ. J. 3.

the enforceability of the option because JMR received and accepted rent payments from NRC.[23]

[33]    NRC further contends that because Option B does not contain subordination language with regard to the Bank's deed of trust on the Golf Course, NRC's contended rights to purchase the Golf Course under Option B should be superior to the Bank's deed of trust.

[34]    On the other hand, JMR contends that Option B is not enforceable because (a) it is not supported by adequate consideration and (b) lacks essential terms including price, conditions for the sale of the Golf Course and a closing date.[24]

[35]    JMR contends it is not estopped from contesting the enforceability of Option B because it accepted rent payments due under the Lease Agreement, not under Option B.[25]

[36]    The Bank contends that the Lease Agreement clearly reflects NRC's agreement to subordination of NRC's interest to any deed of trust entered into by JMR with regard to the Golf Course, and that NRC's argument is without basis.

IV.

DISCUSSION

A.

APPLICABLE LAW

[37]    Under Rule 56(c), summary judgment is to be rendered "forthwith" if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that upon the forecast of evidence there exists no genuine

---

[23] *Id.* 5.
[24] Def's. Mem. Resp. Pl's. Mot. Summ. J. 6-14.
[25] *Id.* 16-19.

issue as to any material fact and that any party is entitled to a judgment as a matter of law. *Grayson v. High Point Dev. Ltd. P'ship*, 175 N.C. App. 786, 788 (2006). The court views the evidence in the light most favorable to the nonmoving party. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733 (1998).

## B.

## ANALYSIS

## 1.

## Enforceability of Option B

[38] The sole question before the court is whether Option B is a valid option to purchase. The answer to that question will be determinative of NRC's Motion as to JMR and JMR's corresponding request for summary judgment in its favor, and of NRC's Bank Motion.

[39] In North Carolina, it is settled that essential to the formation of any contract is "mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Harrison v. Wal-Mart Stores, Inc.*, 170 N.C. App. 545, 550 (2005). There must be a meeting of the minds on the essentials of an agreement. *Creech v. Melnik*, 347 N.C. 520, 527 (1998).

[40] Price, identification of the parties and the property to be sold are essential elements of a contract. *Connor v. Harless*, 176 N.C. App. 402, 405 (2006) (citing *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 600 (1970)). "[A]s to the essential and material contractual term of price, there must be a meeting of the minds." *Id.*

[41] "A contract is nugatory and void for indefiniteness if it leaves any material portions open for future agreement." *Currituck Assocs. – Residential P'ship v.*

*Hollowell*, 166 N.C. App. 17, 27 (2004). "Consequently, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as a result of future negotiations." *Connor*, 176 N.C. App. at 406.

[42]     In the instant case, Option B states, "The Purchase Price for the Property shall be based on fair market value at exercise date validated by an independent third party appraisal."[26] Further, Option B provides that the terms of the contract for purchase and sale of the Golf Course would be "as set forth on the completed 'Offer to Purchase and Contract'"[27] that was attached as Exhibit A to Option B.  However, when Option B was executed, the parties attached a blank "Offer to Purchase and Contract" as Exhibit A to Option B.[28]

[43]     The language of Option B is similar to that of the option to purchase at issue in *Connor*.  176 N.C. App. at 403.  The option in *Connor* provided, "the lessee may . . .  purchase said premises at a price of a fair market value, payable as follows: An amount in cash fair market value at the time of such purchase (based on at least two appraisals) . . . ." *Id.* at 404.

[44]     The court in *Connor* determined that the price term within the option was not sufficiently definite.  It concluded there had been no meeting of the minds as to the price term and therefore, the option was not enforceable.  *Id.*

[45]     In this case, the court is forced to conclude that Option B not only lacks a sufficiently definite price term, but also lacks a sufficient method by which to determine the price term.  *See Phoenix Ltd. P'ship of Raleigh v. Simpson*, __ N.C. App. __, 688 S.E.2d 717, 719-20 (2009) (concluding that an option which provided the purchase price

---

[26] Sept. 20, 2010 Michaud Aff. Ex. E.
[27] Option B ¶ 4.
[28] Sept. 20, 2010 Michaud Aff. Ex. F.

was to be determined based on the opinion of three appraisers, consisting of two appraisers selected by the parties and one selected by the other two appraisers, with the fair market value being the average of the two closest appraisals, provided a sufficient method to determine price).

[46]     There are other material terms that were omitted from Option B.  Unlike the option in *Connor*, Option B does not even provide for two appraisals, but only one by an independent third party.  There are no mechanics either agreed upon or considered as to how and under what circumstances an appraiser shall be engaged or what appraisal protocols shall be used in determining the appraised value of the Golf Course.

[47]     To be enforceable, an option agreement must specify either a definite purchase price, an objective mechanism for determining a definite purchase price or an objective method for identifying a third party to determine a definite purchase.  See *Connor,* 176 N.C. App. at 406.  If the agreement does not provide a definite purchase price, it must reflect clear and unambiguous direction on how to arrive at a purchase price, so that the parties do not have to reach further agreement before a final price may be determined.

[48]     Here, Option B does not set forth an objective process or mechanism for determining a purchase price for the Golf Course.  It simply provides that the purchase price for the Golf Course "shall be based on fair market value at exercise date *validated* by an independent third party appraisal." (emphasis added).  While there is a bare bones agreement as to use of a third party appraisal, there is no agreement as to what fair market value the appraisal is to "validate."  Among other things, there is no agreement as to how or what an initial determination of fair market value is to be made,

how the parties would select an appraiser or that – as NRC contends and JMR disputes – a single party unilaterally could designate an appraiser and impose that person's appraisal on the other party. In the absence of such an agreement, upon NRC's decision to exercise Option B, there was nothing to prevent JMR from engaging its own appraiser and presenting an opposing contended fair market value. If that happened, the agreement does not contain any mechanism for resolving any discrepancies in the fair market value opinions of different appraisers. "With no specification in the agreement as to how to address such greatly varying estimates in the value of [JMR's] property, the price term is not, as it must be, certain and definite." *Connor*, 176 N.C. App. at 406.

[49]     Accordingly, the court is forced to CONCLUDE that Option B lacks the essential term of price. That absence constitutes a fatal flaw, and Option B is not an enforceable option.[29]

2.

Estoppel of JMR

[50]     Having determined that Option B fails for indefiniteness as to the essential term of price, the court now considers NRC's argument that JMR, by accepting rent payments under the Lease Agreement, is estopped from denying the enforceability of Option B.

[51]     The theory of quasi-estoppel prevents a party from accepting benefits from a contract while simultaneously denying the effect of other terms of the same agreement. *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 88 (2001).

---

[29] Because Option B is fatally flawed, it is not necessary for the court to decide whether it is supported by adequate consideration.

[52]     NRC contends that JMR is estopped from denying the enforceability of Option B because it received rent under the Lease Agreement, which was consideration for Option B.[30]  NRC characterizes the Lease Agreement and Option B as a single agreement.[31]

[53]     NRC's argument is misplaced.  The rent payments paid by NRC to JMR were required under the Lease Agreement, not under Option A or Option B.[32]

[54]     NRC primarily relies upon *Brooks v. Hackney*, 329 N.C. 166 (1991) and *Pure Oil Co. of the Carolinas v. Baars*, 224 N.C. 612 (1944).  In *Brooks,* the defendant was estopped from contesting the validity of a contract for the sale of real estate based on an insufficient description of the property because he had made payments under the agreement for eight years and used the property for that period of time.  329 N.C. at 173.  In *Pure Oil*, the court estopped the defendant from contesting the validity of an option that was "an integral part of the transaction" in which the plaintiff conveyed property to the defendant by deed and was granted an option to repurchase that property from defendant.  224 N.C. at 614.

[55]     *Brooks* and *Pure Oil* are materially distinguishable from the instant case.  Unlike the agreements at issue in those cases, the Lease Agreement and Option B before the court do not constitute an integrated single contract or agreement.  Option B was not executed until eight months after the parties entered in to the Lease Agreement.  Further, JMR's acceptance of rent payments due under the Lease Agreement is not inconsistent with its position that Option B is not enforceable.[33]

---

[30] Pl's. Mem. Supp. Mot. Summ. J. 4.
[31] *Id.*
[32] Sept. 20, 2010 Michaud Aff. Ex. B.
[33] *See Whiteacre P'Ship v. BioSignia, Inc.*, 358 N.C. 1, 18 (2004) ("Under a quasi-estoppel theory, a party

[56]     Accordingly, the court CONCLUDES that JMR is not equitably estopped from denying the enforceability of Option B.

[57]     Plaintiff NRC's Motion should be DENIED, and summary judgment as to NRC's claims in this matter should be GRANTED in favor of Defendant JMR.

3.

The Bank's Deed of Trust

[58]     In paragraph 22 of the Lease Agreement, NRC clearly and specifically agreed to subordination of its interests to any subsequent deed of trust granted by JMR with regard to the Golf Course.  Paragraph 26 of the Lease Agreement also anticipates the execution of an option to purchase the Golf Course.

[59]     In substance, NRC argues that because the Option B document itself does not contain subordination language, the Bank's deed of trust should not have priority over NRC, and that NRC's title received upon exercise of and closing upon Option B should be free and clear of the Bank's deed of trust.

[60]     The court has concluded that Option B is not enforceable.  However, even if it was enforceable, paragraph 22 of the Lease Agreement makes it clear that NRC agreed to subordination of its interests to any then-existing or future deed of trust granted with regard to the Golf Course.  NRC's arguments to the contrary notwithstanding, the real property leasehold and option interests granted to NRC in the Lease Agreement and Option B were intentionally and specifically made subordinate to any existing or future deed of trust on the Golf Course.  NRC's statutory notice arguments do not support its position.

who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that *same transaction* or instrument.") (emphasis added).

[61]     Further, NRC's contention that JMR had an obligation to deliver clear title to the Golf Course upon proper exercise of the option does not have any effect upon the priority between the option and the deed of trust.  If Option B were enforceable, title secured upon exercise of the option still would be subordinate to the Bank's deed of trust. The seller's obligation to deliver clear title does not impact the Bank's secured interest under the deed of trust.  The same reasoning holds true with regard to the fact that the debtor on the Promissory Note secured by the deed of trust is Shallowbag Bay Club, LLC.  That fact does not change the relative priority that would exist between NRC and the Bank, should Option B be enforceable and exercised.

[62]     Plaintiff NRC's Bank Motion should be DENIED, and summary judgment as to NRC's claims in this matter should be GRANTED in favor of Defendant Bank.

### 4.

### NRC's Security Motion

[63]     In view of the rulings reflected in this Opinion and Order, NRC is not entitled to additional deposit of security by JMR with regard to operation by JMR of the Golf Course pursuant to previous Order of this court.

[64]     Further, the court deems the security previously ordered and deposited by JMR to be fair and adequate.

[65]     Accordingly, in the exercise of its discretion and as a matter of law, the court CONCLUDES that NRC's Security Motion should be DENIED.

## JMR's Contempt Motion

[66]     The Contempt Motion previously was withdrawn by JMR, and should be DENIED as moot.

NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED, ADJUDGED and DECREED that:

[67]     It is DECLARED that Option B is not enforceable.

[68]     Plaintiff NRC Golf Course, LLC's Motion for Summary Judgment Against JMR Golf, LLC is DENIED.

[69]     Summary Judgment in favor of Defendant JMR Golf, LLC and against Plaintiff NRC Golf Course, LLC is GRANTED.

[70]     Plaintiff NRC Golf Course, LLC's Motion for Summary Judgment Against the Bank of Currituck is DENIED.

[71]     Summary Judgment in favor of Defendant Bank of Currituck and against Plaintiff NRC Golf Course, LLC is GRANTED.

[72]     Plaintiff NRC Golf Course, LLC's Motion for Order Requiring Additional Security is DENIED.

[73]     Defendant JMR Golf, LLC's Verified Motion for Civil Contempt Against Plaintiff NRC Golf Course, LLC and Brett Michaud is DENIED, as moot.

IT IS FURTHER ORDERED that:

[74]     On January 18, 2011, at 2:00 p.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will hold a hearing and status conference with all parties for the purpose of considering and/or determining

then-remaining issues between the parties, including but not limited to (a) future possession and control of the Golf Course and (b) present and future compensation, if any, to be paid by JMR to NRC for use of the Golf Course Operating Equipment at times material to this civil action.

[75]      After such hearing and status conference, the court anticipates entering a final disposition Order relative to this matter

This the 29th day of December, 2010.