EDWARD EARL STALLINGS v. W. G. PURVIS, STANLEY B. RUPY,
CHARLES W. TROUTMAN, J. FRANKLIN KRIEGER, WILLIAM F. BEAL,
JR. AND EDWARD E. HOLLOWELL, TRADING AS INVESTMENT PROPER-
TY ASSOCIATES AND W. G. PURVIS, INDIVIDUALLY

No. 7810SC1087

(Filed 4 September 1979)

1. Landlord and Tenant § 2— sufficiency of evidence of lease

Evidence presented by plaintiff would permit the jury to find a lease
agreement between the parties where the evidence tended to show that plain-
tiff as lessee agreed to rent from one defendant individually as lessor or all
defendants collectively as lessors particularly described realty for a term of
one year for a monthly rental of $250.

2. Principal and Agent § 6— lease of property by one partner—proof of agen-
cy—ratification by other partners

Evidence presented by plaintiff was sufficient to permit the jury to find
that one defendant as agent for the other defendants and in his own capacity
contracted to lease the property in question where it tended to show that the
defendant land owners were engaged in business as general partners; one
defendant's phone number was on the for sale sign located on the premises; he
was referred to as the "leg man" or "custodian" of the property by two of the
other five owners; a check made out to the defendant as agent for rent and
tendered to another of the owners was accepted by him; this acceptance of
rent could constitute a ratification of the defendant's actions; in his dealings
with the defendant and two of the other owners, plaintiff was at no time given
notice that the defendant did not have the power he claimed to have to deal
with the property; no one objected to plaintiff's going into possession and mak-
ing major renovations; and the defendant's statements in front of other people
seemed to indicate that he could have made a lease for one year, though he
was not the fee owner.

3. Evidence § 33— evidence excluded as hearsay—error

The trial court erred in excluding on the ground of hearsay testimony by
a witness that one defendant had told her that he had bought the real proper-
ty in question from the partners, the other defendants, since such testimony
was admissible to corroborate plaintiff's testimony that the same defendant
had told him that he was in control of the property which plaintiff attempted
to rent.

APPEAL by plaintiff from *Godwin, Judge.* Judgment entered
5 July 1978 in Superior Court, WAKE County. Heard in the Court
of Appeals 28 August 1979.

Plaintiff instituted this action by filing a complaint and sum-
mons on 25 April 1973. The case came on for trial on 3 July 1978.

At the close of plaintiff's evidence, defendants moved for a directed verdict.

The evidence presented by plaintiff, in the light most favorable to him, tends to show the following: For six years prior to 1970, plaintiff leased a restaurant and club in the 5800 block of Glenwood Avenue. When the ownership changed, he was required to vacate by 30 March 1970. He wished to stay in the same area. A suitable building located at 6311 Glenwood Avenue was for sale. He contacted a realtor who drew up an offer to purchase. The realtor knew Stan Rupy, a defendant in this action, to be one of several investors who owned the building. Rupy rejected the offer for the others and signed the rejection in his own name. The realtor delivered the rejection to plaintiff and suggested that he contact a Mr. Gordon Purvis about leasing the premises, as he was the "leg man" for the group of investors. The realtor had made plaintiff aware that the property was owned jointly by several people but did not reveal their names.

Plaintiff called Purvis on the realtor's suggestion. Purvis' number was on the for sale sign in front of the building. Purvis told plaintiff he had "sole custody" of the building and that a lease could be arranged. Mr. Purvis and his son came to plaintiff's business on 25 March 1970. Plaintiff testified that they agreed on a one year lease for $250.00 a month beginning 1 May 1970 with an option to renew. Plaintiff would care for the interior of the building and pay the utilities, and Purvis would be responsible for the exterior. Purvis gave plaintiff a key so that he could renovate the interior during the month of April. Plaintiff was aware that some of the people involved in this suit as defendants had invested in clubs in the area, but he relied on Mr. Purvis' statement that he had taken over this particular property and had the right to lease it. Plaintiff did not check for the record owners and assumed Purvis was empowered either for himself or as agent to lease it.

Plaintiff began renovations which took several months and cost more than $6,000.00 in materials and labor. Purvis came out several times to observe and approve the renovations. During one of these visits, a workman overheard a discussion of the lease during which Purvis assured plaintiff a written lease at $250.00 per month rental would be forthcoming as they earlier agreed.

Problems developed with the septic tank in late April. Plaintiff also wanted the lease in writing. When plaintiff contacted Purvis, he was told to contact an attorney, Mr. Edward Hollowell, also a defendant in this action. This was the first time plaintiff had heard of Hollowell. When he called Hollowell on 28 April, he learned for the first time that six people were involved as owners. Hollowell did not tell plaintiff that Purvis had no authority to enter into a lease. He referred to Purvis as the "custodian" of the property. Mr. Hollowell said the owners would meet soon, and a lease would be ready by 1 May for plaintiff to pick up. At the meeting, plaintiff tendered and Hollowell accepted a check for the first month's rent less certain deductions approved by Purvis. The check was payable to "W. G. Purvis, Agent." On 5 May, plaintiff still did not have the lease in writing, but Purvis assured him that one would be forthcoming. Plaintiff was told there was a misunderstanding among the partners. Plaintiff subsequently learned the property was still for sale. He made a written demand to Hollowell for a written lease. Purvis came out to the 6311 Glenwood Avenue property on 14 May when plaintiff complained about a faulty water heater. On the premises, Purvis reaffirmed the same terms given on 25 March. One of plaintiff's employees overheard this discussion. She remembered that all the terms were stated but could not recall who said what.

On or about 1 June, plaintiff forwarded the next monthly payment of $250.00 to Purvis. On 4 June, Purvis came to the premises with a written lease. The written lease had materially different terms from the oral agreement. The rent was for $300.00 rather than $250.00 per month after 30 December 1970, and the term was for ninety days instead of a year. Plaintiff returned the lease with a certified letter to each member in the association demanding a lease reflecting the oral agreement by 10 June. No such lease or any offer to reimburse for expenses was forthcoming. Plaintiff began vacating the premises in July but had no place to store all his equipment. In September, when he obtained storage facilities, the locks were changed and he was unable to get his property out and had not been able to as of trial despite demands on the owners of the property.

The two rent checks were never cashed. Plaintiff filed for bankruptcy on 23 December 1970 and all money in the account was withdrawn by the bankruptcy trustee. On cross-examination

of the plaintiff's witnesses, defendants attempted to prove that plaintiff's renovation had damaged the premises.

The judge granted defendants' motion for directed verdict and plaintiff appeals.

*Tharrington, Smith & Hargrove, by Wade M. Smith, for plaintiff appellant.*

*Vaughan S. Winborne, for defendant appellees.*

VAUGHN, Judge.

The central issue of this case is whether plaintiff offered evidence from which the jury might find that the parties entered into a contract in April, 1970 for the lease of the property at 6311 Glenwood Avenue, Raleigh, North Carolina. All three of plaintiff's assignments of error deal with the proof of this matter.

At the close of plaintiff's evidence, which we have set out at some length, the trial court granted defendants' motion for directed verdict pursuant to Rule 50(a) of the Rules of Civil Procedure.

> "A motion for a directed verdict pursuant to Rule 50(a) presents the same question as did a motion for nonsuit prior to the adoption of the New Rules of Civil Procedure. The question is whether the evidence presented is sufficient to carry the case to the jury. In passing on this motion, the trial judge must consider the evidence in the light most favorable to the non-movant, and conflicts in the evidence together with inferences which may be drawn from it must be resolved in favor of the non-movant. The motion may be granted only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law."

> *Arnold v. Sharpe,* 296 N.C. 533, 537, 251 S.E. 2d 452, 455 (1979), *citing Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971).

Under this standard, we hold that the trial court erred in granting defendants' motions for directed verdict. Enough evidence was presented to permit a jury to find that Purvis as agent for the others and in his own capacity contracted to lease the property.

[1]   The essentials of a lease creating an estate for years are (1) the names of the parties (lessor and lessee); (2) a description of the demised realty; (3) a statement of the term of the lease; and (4) the rent or other consideration. A lease is a contract for valuable consideration whereby one agrees to let another have the occupation and profits of realty for a definite period of time. *Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964). The one year lease did not have to be in writing to be enforceable. G.S. 22-2. Taken in a light most favorable to plaintiff as non-movant, the evidence presented by plaintiff would permit the jury to find a lease agreement. The evidence provides the essentials of a lease of particularly described realty, being 6311 Glenwood Avenue, for a term of one year for a monthly rental of $250.00 by plaintiff as lessee from defendant Purvis individually as lessor or all defendants collectively as lessors. The evidence in a light most favorable to plaintiff does indicate that Purvis had capacity to enter into the lease which was made.

[2]   It is admitted in the pleadings that the defendant owners were engaged in business as general partners. The acts of Purvis and also of Hollowell as well could, therefore, bind the partnership.

> "Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority." G.S. 59-39(a).

The principles of agency law could bind the investors. Principals are liable upon contracts duly made by an agent with a third person "(1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority." *Investment Properties of Asheville, Inc. v. Allen*, 283 N.C. 277, 285-86, 196 S.E. 2d 262, 267 (1973).

Under agency law principles, even if the evidence in this case does not show that Purvis acted as an agent within the scope of his actual authority, it tends to show that the other defendants ratified his actions and could therefore be estopped to now deny his authority and that the other defendants held Purvis out to others, including plaintiff, as having apparent authority to lease the realty. Both implied agency authority or agency by estoppel as it is sometimes known and apparent authority theories could be upheld by the facts in evidence and the inferences therefrom at the time plaintiff rested his case. Purvis's phone number was on the for sale sign located on the premises. He was referred to as the "leg man" or "custodian" of the property by Rupy and Hollowell, two of the other five owners. A check made to "W. G. Purvis, Agent" for rent tendered to Hollowell was accepted by Hollowell. This acceptance of rent could constitute a ratification. On his dealings with Purvis and Hollowell directly and Rupy through the realtor, plaintiff was at no time given notice that Purvis did not have the power he claimed to have to deal with the property. No one objected to plaintiff going into possession and making major renovations.

Purvis individually could have made a lease for one year. His statements to plaintiff in front of others seem to indicate he could. One does not have to be the fee owner to make a lease. *See* Webster, Real Estate Law in North Carolina, § 206 (1971). Although the present case, as well as others at the directed verdict stage, present thorny problems (*see e.g. Investment Properties of Asheville, Inc. v. Allen,* 13 N.C. App. 406, 185 S.E. 2d 711, *aff'd.,* 281 N.C. 174, 188 S.E. 2d 441 (1972), *reversed on rehearing,* 283 N.C. 277, 196 S.E. 2d 262 (1973)), we hold plaintiff's evidence sufficient to take the case to the jury.

The trial court on defendants' motions struck two of plaintiff's responses on direct examination concerning his 25 March meeting with Purvis. Plaintiff testified, "It was my understanding that we had an agreement," and "Well, we may have discussed some of the lease agreements again, I don't know, I don't recall exactly, but I felt the lease was secure." These statements were obviously incompetent, and the trial court's action striking them from evidence was proper.

[3] Plaintiff produced a witness who would have testified, if permitted, that she talked with Mr. Purvis in late 1969 about leasing the property at 6311 Glenwood Avenue and that "he told me he had bought out the other partners and that he had paid $45,000.00 for the property." The trial court sustained defendants' objection to this evidence. Plaintiff contends this evidence was not hearsay or, if so, was admissible to corroborate the plaintiff's testimony that Purvis told him he was owner or custodian of the property. Defendants make some sort of argument that this information lacks logical relevance. We hold that it was logically and legally relevant. For the purpose plaintiff seeks to use it, it is admissible. It does not prove the truth of the matter asserted—that Purvis owned the land—but instead corroborates the plaintiff's testimony that Purvis told him he was in control. It was not hearsay and, if offered at the next trial, should be admitted. *Kelly v. Furniture Co.*, 199 N.C. 413, 154 S.E. 674 (1930). 1 Stansbury, N.C. Evidence, § 141 (Brandis rev. 1973).

The judgment is reversed and the case is remanded.

Reversed and remanded.

Judges HEDRICK and ARNOLD concur.