DAVID E. FULLER AND REID M. BOST, JR., D/B/A FULLER & BOST, A GENERAL
PARTNERSHIP v. THE SOUTHLAND CORPORATION, D/B/A THE
SOUTHLAND CORPORATION OF TEXAS, A CORPORATION

No. 8126SC530

(Filed 4 May 1982)

1. **Rules of Civil Procedure § 56.3— summary judgment—consideration of affidavit—requirement of personal knowledge**

    An affidavit is not required to state specifically that it is made on personal knowledge in order to be considered upon a motion for summary judgment, it being sufficient if the affidavit can be interpreted so as to comply upon its face with the requirements of G.S. 1A-1, Rule 56(e).

2. **Rules of Civil Procedure § 56.3— summary judgment—affidavit statement not based on personal knowledge**

    A statement in an affidavit that the affiant "believes" that a lease was signed by one plaintiff's secretary when he was in plaintiff's office was not based on personal knowledge and could not be considered upon a motion for summary judgment.

3. **Frauds, Statute of § 2— memorandum of lease—unconnected writings—internal reference to writings**

    In order for separate writings which are not physically connected to constitute a sufficient memorandum of the terms of a lease to satisfy the statute of frauds, G.S. 22-2, the unconnected writings must contain a reference to the other writings and not merely a reference to the same subject matter.

4. **Frauds, Statute of § 2.1— memorandum of lease—genuine issue of material fact**

    Although exhibits presented by plaintiffs had to be considered singly because they contained no internal references to each other, the exhibits, an affidavit by defendant's real estate manager, and a letter from the manager to

1

plaintiffs were sufficient to present a genuine issue of material fact as to the existence of a sufficient memorandum of the terms of a lease of space for a liquor store to satisfy the statute of frauds.

5. **Frauds, Statute of § 2.1— sufficiency of memorandum of lease—parol evidence —apparent authority to sign lease**

A letter from defendant's real estate manager to plaintiffs stating that defendant "will lease a 40 x 40 building adjacent to the 7-Eleven store at Tega Cay, South Carolina" and that the "monthly rental will be $400.00 and the term of lease will be 20 years" constituted a sufficient memorandum of the terms of the lease to satisfy the statute of frauds, G.S. 22-2, when considered with certain parol evidence, including a blank lease, two "Acceptance of Building" forms for a 7-Eleven store at Tega Cay, and a legal description of the property sent by one plaintiff to defendant's real estate manager. Furthermore, although the evidence showed that defendant's real estate manager had no actual authority to bind defendant in a lease or memorandum of lease, there was sufficient evidence from which the jury could find that defendant's manager had the apparent authority to bind defendant by his signature on the letter to plaintiffs.

Judge HEDRICK concurs in result.

APPEAL by defendant from *Griffin, Judge.* Judgment entered 4 December 1980 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 14 January 1982.

This is an action to recover rent due to plaintiffs from defendant on a building intended for use as a liquor store. Plaintiffs allege that the parties agreed to lease the liquor store and that a series of writings constitutes a sufficient memorandum of lease which memorializes the terms of their agreement. Defendant denies the existence of a valid lease.

Plaintiffs and defendant moved for a summary judgment with supporting affidavits; both motions were denied by the judge. At trial, the jury found that the parties entered into a valid lease agreement and that defendant breached such agreement by its failure to pay the rent as specified. From a money judgment for plaintiffs, defendant appeals.

*Hamel, Hamel, Pearce & Weaver, by Reginald S. Hamel and Hugo A. Pearce III, for plaintiff-appellees.*

*C. Eugene McCartha for defendant-appellant.*

HILL, Judge.

Plaintiffs, doing business as Fuller & Bost, a general partnership, acquired sites, built, and leased 7-Eleven stores to defendant. The course of business established by the parties required defendant to inspect and formally accept the buildings. Plaintiff Fuller testified that defendant "then prepare[s] this form setting forth the terms of the lease and when the lease is to commence. This is signed, in this particular instance, by Mr. Bost and myself as lessor and I think Mr. Jack Dold, who was the Division Manager for the lessor [sic] and this triggered the rent payments."

Pursuant to this course of business, on 30 March 1972, defendant approved plaintiffs' acquisition of a site in Tega Cay, South Carolina, for the construction of a 7-Eleven store. According to their instructions from defendant, plaintiffs "were to duplicate what we had done in Kings Grant [in Charleston, South Carolina], that is, a 7-Eleven store, and additional space beside it to be used as a liquor store and to be leased by The Southland Corporation. This we did."

A lease for the 7-Eleven store was fully executed on 24 May 1972. Defendant accepted the 7-Eleven store, occupied it, and began to pay the rent due. J. L. "Pete" Overton, then defendant's real estate manager for the southern division, testified that he signed a blank lease for the liquor store because "Mr. Fuller told me he needed something to show to his finance people and asked me if I would sign a lease, that's all he needed it for, it was for finance purposes and I told him I would." Plaintiff Fuller described the signatures on that document:

> . . . [I]t says executed by the lessor on April 24, 1972, David E. Fuller and Reid M. Bost. Executed by the lessee on May 24, 1972. The Southland Corporation, by J. L. Overton, Vice President, attested by Penny Hawkins, Assistant Secretary. As to how I received this, it was delivered to me by Mr. Overton.
>
> That is not Penny Hawkins' signature on the lease agreement. I was aware of that at the time I received it. I was almost finished with construction when we received the lease agreement and we were trying to close out our permanent loan and we needed the executed lease for the loan.

The lease given to plaintiffs for loan purposes had a term of 20 years with two five-year options. The rent was $400 per month. However, *no description of the property was attached.* Overton stated, "I do not see any difference in that document from what I understood the terms of the lease agreement to be."

Plaintiff Fuller wrote a note to Overton on 7 July 1972, stating, "Attached are legal discriptions [sic] for the Liquor Stores that we are proposing for Kings Grant in Charleston and Tega Cay in York County, S. C. As a matter of information, the same discriptions [sic] apply for the 7/11 stores. Give my regards to Claudia. Hope to see you soon." Attached to the note was a metes and bounds description entitled "LEGAL DESCRIPTION: LIQUOR STORE/TEGA CAY/YORK COUNTY, S.C." and a boundary survey of the Tega Cay property.

On 26 February 1973, Overton sent the following letter to plaintiff Fuller: "This will verify that the Southland Corporation will lease a 40 x 40 building adjacent to the 7-Eleven store at Tega Cay, South Carolina. The monthly rental will be $400.00 and the term of lease will be 20 years." However, plaintiffs never received any rent on the liquor store from defendant. Plaintiffs received a letter dated 18 December 1974 from defendant's real estate representative, David Laffitte, stating, in part, as follows:

> It has long been a policy of The Southland Corporation that new store sites are not finally approved unless and until the lease agreement or contract of sale has been properly executed by an authorized corporate officer. These documents should bear our corporate seal. Terms of these instruments must be met, or waived by the corporate officer. If you purpose [sic] to sell, lease or build and lease for us, any funds you may spend prior to proper execution of an appropriate instrument are expended at your own risk and expenses.

Plaintiff Fuller testified that this letter first informed him "about the limited authority of a real estate representative and about the need for an officer to sign a lease, I had never been informed of that, not prior to that letter."

Plaintiff's first notification that defendant did not intend to honor the terms of the 26 February 1973 letter was a letter to plaintiff Fuller on 6 January 1975, in which Dold wrote, "We are

not interested in the extra space at Tega Cay at this time. The area has not developed as projected and our 7-Eleven store there is marginal. Without the rent abatement clause, we would be losing a considerable amount of money."

Plaintiffs attempted to rent the liquor store to others; a lease was entered into for one year, April 1979 through March 1980, but it was not renewed. Plaintiff Fuller testified that defendant owes Fuller & Bost $27,200 in rent for the liquor store at Tega Cay.

In its first argument, defendant assigns error to the judge's failure to grant its motion for summary judgment. Defendant argues that the judge erroneously considered certain affidavits and exhibits filed in support of plaintiff's summary judgment motion which, if excluded, would have compelled the granting of its motion.

[1] Initially, defendant challenges the affidavit of Overton on the grounds that it "fails to state that it is made on personal knowledge, it sets forth facts that would not be admissible into evidence, and it fails to show affirmatively that he [Overton] would be competent to testify to the material matters stated therein." Although G.S. 1A-1, Rule 56(e) states that affidavits in support of a motion for summary judgment must have these elements, we do not interpret the rule to require that such affidavits specifically state the elements as defendant suggests; it is sufficient that the affidavits can be interpreted so as to comply upon their faces. *Middleton v. Myers*, 41 N.C. App. 543, 255 S.E. 2d 255 (1979).

[2] Here, paragraph 16 of Overton's affidavit states the following, in part:

He executed the aforementioned LEASE AGREEMENT regarding the liquor store, in behalf of the defendant, over the blank beneath which appears the title "Vice President." He was not a vice president of the defendant at that time. He did not sign Penny Hawkins' name thereto; *however, he believes that it was signed by Mr. Fuller's secretary when he was in Mr. Fuller's office.*

(Emphasis added.) Upon our review of the entire affidavit, that which is emphasized above is the only portion that does not com-

ply with the requirements of Rule 56(e). "What an affiant thinks are facts, unless it is a situation proper for opinion evidence, is not information made on personal knowledge proper for consideration on a summary judgment motion." *Faulk v. Dellinger*, 44 N.C. App. 39, 42, 259 S.E. 2d 782, 784 (1979). *Accord Peterson v. Winn-Dixie of Raleigh, Inc.*, 14 N.C. App. 29, 187 S.E. 2d 487 (1972). Thus, the remainder of Overton's affidavit was properly considered by the judge at the summary judgment hearing.

Defendant also challenges the use of the blank lease given to plaintiffs by Overton for loan purposes because the signature of "Penny Hawkins" thereon was not hers and was made by another without her authorization. Likewise, defendant objects to the use of this and other exhibits which contain no "internal reference" to the liquor store. Plaintiffs offered these exhibits to support their contention that together, the exhibits constitute a sufficient memorandum of lease under G.S. 22-2, the statute of frauds, by which defendant is bound.

G.S. 22-2 states the following:

> All contracts to sell or convey any lands, tenements or hereditaments, or any interest in or concerning them, . . . *and all other leases and contracts for leasing lands exceeding in duration three years from the making thereof, shall be void unless* said contract, or *some memorandum or note thereof, be put in writing and signed by the party to be charged therewith,* or by some other person by him thereto lawfully authorized.

(Emphasis added.) However,

> [t]o comply with the statute it is not necessary that all of the provisions of a contract be set out in a single instrument. "The memorandum required by the statute is sufficient if the contract provisions can be determined from separate but related writings." *Hines v. Tripp*, 263 N.C. 470, 474, 139 S.E. 2d 545, 548. "The writings must disclose, at least with sufficient definiteness to be aided by parol, the terms of the contract, the names of the parties, and a description of the property." 4 Strong, N.C. Index 2d, Frauds, Statute of, § 2, p. 62.

*Greenburg v. Bailey*, 14 N.C. App. 34, 37, 187 S.E. 2d 505, 507 (1972). *See* 6 Strong's N.C. Index 3d, Frauds, Statute of § 2, p.

345. The writings need not be physically connected if they contain internal reference to other writings. *Smith v. Joyce*, 214 N.C. 602, 200 S.E. 431 (1939); *Mezzanotte v. Freeland*, 20 N.C. App. 11, 200 S.E. 2d 410 (1973), *cert. denied*, 284 N.C. 616, 201 S.E. 2d 689 (1974).

Our review of the challenged exhibits — a letter from defendant's real estate representative authorizing the acquisition of store sites, including one at Tega Cay; two "Acceptance of Building" forms for "7-Eleven Store #1201-16262" at Tega Cay; and the blank lease — reveals no reference to the liquor store, as defendants contend. More importantly, the exhibits contain no internal references to one another to permit our consideration of them as a part of a memorandum of lease for the liquor store. Additional exhibits upon which plaintiff relies to constitute a sufficient memorandum — the lease executed for the 7-Eleven store at Tega Cay, a legal description for the 7-Eleven store site at Tega Cay and a "Memorandum of Lease" referring to the lease executed for the 7-Eleven store at Tega Cay — evidence the same deficiencies.

[3] We are compelled to note, however, that plaintiff Fuller's 7 July 1972 note to Overton does contain a reference to the liquor store. Nevertheless, we interpret the requirement that "the writings need not be physically connected if they contain internal reference to other writings" to mean that unconnected writings must contain a reference to the other *writings*, not merely a reference to the same subject matter. This interpretation is supported by *Mezzanotte v. Freeland, supra* at 13, 200 S.E. 2d at 412, wherein the subject contract stated, " 'said parcel of real estate being more particularly described in Attachment hereof.' " The "Attachment" consisted of photocopies of deeds which were never physically attached to the contract. This Court referred to the "Attachment" language quoted above and the fact that the unconnected "Attachment" was delivered contemporaneously with the execution of the contract, and found that these writings may be taken together to constitute a memorandum sufficient to satisfy the statute of frauds. *Id.* Since the 7 July 1972 note in the present case contains no reference to any other writings, it, too, has the deficiency of the challenged exhibits.

[4] Thus, in determining whether a sufficient memorandum of lease existed in the present case, the exhibits discussed above

must be considered singly, not in combination with each other. However, those exhibits considered singly, along with the portion of Overton's affidavit not stricken and Overton's 26 February 1973 letter to plaintiff Fuller, present genuine issues of material fact regarding the existence of a sufficient memorandum of lease. *See* G.S. 1A-1, Rule 56(c). The judge therefore did not err in allowing this matter to proceed to trial.

[5]   Having decided that the judge did not err in denying defendant's motion for summary judgment, we now consider defendant's fifth argument, in which it contends that the trial judge erred in denying its motions for directed verdict on the ground that plaintiffs presented insufficient evidence at trial to show that there was a memorandum of lease in compliance with G.S. 22-2. The question raised by a directed verdict motion is whether the evidence is sufficient to go to the jury. *Rappaport v. Days Inn of America, Inc.*, 296 N.C. 382, 250 S.E. 2d 245 (1979); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971). In passing upon such a motion, the trial judge must consider the evidence in the light most favorable to the nonmovant, resolving all conflicts and giving to him the benefit of every inference reasonably drawn in his favor. *Rappaport v. Days Inn of America, Inc., supra; Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). A directed verdict motion by defendant may be granted only if the evidence is insufficient as a matter of law to justify a verdict for plaintiff. *Husketh v. Convenient Systems, Inc.*, 295 N.C. 459, 245 S.E. 2d 507 (1978); *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974).

The essentials of a lease, which must be disclosed in the memorandum with sufficient definiteness to be aided by parol evidence are (1) the parties' names (lessor and lessee), (2) a description of the realty demised, (3) a statement of the term of the lease, and (4) the rent or other consideration. *Carolina Helicopter Corp. v. Cutter Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964); *Stallings v. Purvis*, 42 N.C. App. 690, 257 S.E. 2d 664 (1979). As noted above, G.S. 22-2 additionally requires that a memorandum of lease be "put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." Taken singly, only Overton's letter to plaintiff Fuller of 26 February 1973 can be evaluated seriously to determine the existence therein of the essentials of a lease and

the requirements of the statute of frauds. The remaining exhibits discussed above fail this test in one or more essentials without contest. We now must determine whether the 26 February 1973 letter is a sufficient memorandum of lease for the liquor store upon which defendant is bound.

We find that the essentials of a lease are sufficiently definite in the 26 February 1973 letter to be aided by parol evidence. In *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968), where an ambiguity in the subject lease was discussed, our Supreme Court stated the parol evidence rule as the following:

> ". . . The legal effect of a final instrument which defines and declares the intentions and rights of the parties cannot be modified or corrected by proof of any preliminary negotiations or agreement, nor is it permissible to show how the parties understood the transaction in order to explain or qualify what is in the final writing, in the absence of an allegation of fraud or mistake or *unless the terms of the instrument itself are ambiguous and require explanation. . . .*"

*Id.* at 587, 158 S.E. 2d at 835, *quoting Knitting Mills v. Guaranty Co.*, 137 N.C. 565, 569, 50 S.E. 304, 305 (1905) (emphasis original). Thus, although certain of plaintiff's exhibits in the present case have been found to be insufficiently related to one another by "internal reference" for consideration as a portion of a memorandum of lease under G.S. 22-2, they may be considered as parol evidence of the parties' intentions where the terms of the memorandum are ambiguous. For this reason, the trial judge did not err in admitting, among other exhibits, the 26 February 1973 letter, the blank lease, and the "Acceptance of Building" form for "7-Eleven Store #1201-16262" at Tega Cay as substantive evidence. Defendant's fourth and eighth arguments are therefore without merit.

Defendant cites three ways in which the 26 February 1973 letter must "fail" as an insufficient memorial of the terms of a lease. First, defendant states that the letter does not designate which party is the lessor and lessee. Nevertheless, this term does not fail because the blank lease explains the ambiguity by stating, "David E. Fuller and Reid M. Bost, Jr. herein referred to as LESSOR, and THE SOUTHLAND CORPORATION, . . . herein referred to as LESSEE." Plaintiff Fuller's testimony in this regard further explains and resolves this ambiguity. Second, defendant states

that the letter lacks a sufficient description of the demised premises. This term also does not fail since plaintiff Fuller's 7 July 1972 note and attachment to Overton specifically described the liquor store property. Further, plaintiff's testimony reveals the existence of only one 7-Eleven store at Tega Cay. The statement in the 26 February 1973 letter that defendant "will lease a 40 x 40 building adjacent to *the* 7-Eleven store at Tega Cay, South Carolina," together with this parol evidence, is sufficient to explain and resolve this ambiguity. (Emphasis added.) Third, defendant states that the letter contains no designation of the beginning of the stated 20 year term of the lease. As in the first instance, this term does not fail because the blank lease states the following:

> 4. TERM. The primary term of this lease shall commence on the first day of the first calendar month following (1) 15 days after the acceptance by LESSEE'S architect of the building and other improvements to be constructed on the demised premises, or (2) the date that LESSEE or its assigns shall first be open for business to the public, whichever event first occurs; and shall continue for a period of 20 years thereafter, . . ..

The statement in the 26 February 1973 letter that "[t]he monthly rental will be $400" is sufficient to show the rent without the aid of parol evidence. Again, we note that both parties understood that the terms of this blank lease would govern the liquor store transaction.

Thus, the 26 February 1973 letter, aided by the parol evidence recounted above, sufficiently states the essentials of a lease. For the letter to be a memorandum of lease to satisfy the statute of frauds, however, it must be determined whether Overton's signature may bind defendant as "the party to be charged."

The requirement of the statute of frauds that "the party to be charged" must sign the writing has been interpreted to mean that such a party is "the one against whom relief is sought . . .." *Lewis v. Murray*, 177 N.C. 17, 19, 97 S.E. 750, 751 (1919). *See* G.S. 22-2.

> If there be a written memorial of so much of the contract as is binding on the party to be charged therewith, so expressed

that its terms can be understood, and *it be signed by one who is proved or admitted by the principal to have been authorized as agent to act for him, it is a sufficient compliance with the statute if the agent sign his own name instead of that of his principal by him.* [Citations omitted.] The authority of the agent . . . may be shown *aliunde* and by parol . . ..

*Hargrove v. Adcock*, 111 N.C. 166, 171, 16 S.E. 16, 17 (1892), *quoted in Rose v. Vulcan Materials Co.*, 282 N.C. 643, 670, 194 S.E. 2d 521, 539 (1973) (emphasis added). *See generally Reichler v. Tillman*, 21 N.C. App. 38, 203 S.E. 2d 68 (1974); *Yaggy v. The B.V.D. Co.*, 7 N.C. App. 590, 173 S.E. 2d 496 (1970).

A principal is liable upon a contract duly made by his agent with a third person (1) when the agent acts within the scope of his actual authority; (2) when the contract, although unauthorized, has been ratified; (3) when the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his actual authority. [Citations omitted.] "One dealing with an agent or representative with known limited authority can acquire no rights against the principal when the agent or representative acts beyond his authority or exceeds the apparent scope thereof." *Texas Co. v. Stone*, 232 N.C. 489, 491, 61 S.E. 2d 348, 349 (1950).

*Investment Properties of Asheville, Inc. v. Allen*, 283 N.C. 277, 285-86, 196 S.E. 2d 262, 267 (1973). *See also Rumbough v. Southern Improvement Co.*, 112 N.C. 751, 17 S.E. 536 (1893). Furthermore, the agent's power to bind the corporation may be " 'inferred from the conduct of the corporation in the transaction of its business and the power which the corporation has customarily permitted the . . . agent to exercise.' " *Yaggy v. The B.V.D. Co.*, *supra* at 601, 173 S.E. 2d at 504, *quoting* 19 Am. Jur. 2d, Corporations § 1227, p. 640.

In the present case, Overton testified that his duties as real estate manager included finding prospective locations for 7-Eleven stores, doing market surveys, working with landowners and developers, negotiating leases, and coordinating real estate representatives in their efforts to acquire store sites. The division manager was Overton's immediate supervisor and "would give ap-

proval." There is no evidence that Overton's authority extended to signing lease agreements on behalf of defendant. In fact, the lease executed by the parties for the 7-Eleven store at Tega Cay was signed for defendant by a vice president, and attested by an assistant secretary. Thus, there is no evidence that Overton had the actual authority to bind defendant through his signature on a lease or memorandum of lease.

There is no evidence that defendant in any way ratified the terms of a lease among it and plaintiffs as evidenced by the 26 February 1973 letter.

However, there is conflicting evidence concerning whether plaintiffs knew that signing a lease, or a memorandum of lease, was beyond the scope of Overton's actual authority. Plaintiff Fuller testified that in the course of his business with defendant, leases are signed "by Mr. Bost and myself or lessor and I think Mr. Jack Dold, who was the Division Manager for the lessor [sic] and this triggered the rent payments." He also testified that he is familiar with lease agreements generally, and stated, "I am aware of the fact that a corporate lease agreement must be signed by the President or Vice President and countersigned by the Secretary or Assistant Secretary," but whether this is required for a valid lease, "I cannot say from a legal standpoint." Plaintiff Fuller also knew that Overton "had the title of Real Estate Representative," and that defendant's lease agreements were executed in Dallas, Texas, the home office. But he testified that until Laffitte's letter to him of 18 December 1974, he did not know "about the limited authority of a real estate representative and about the need for an officer to sign a lease . . .." The evidence therefore is conflicting upon the issue of whether Overton had, in plaintiff's eyes, the *apparent authority* to bind defendant in a lease or in a memorandum of lease.

We find that upon this evidence, defendant's motions for directed verdict properly were denied. "On a motion for a directed verdict the evidence must be interpreted most favorably to plaintiff, and if it is of such character that reasonable men may form divergent opinions of its import, the issue is for the jury." *State Automobile Mutual Insurance Co. v. Smith Dry Cleaners, Inc.*, 285 N.C. 583, 587, 206 S.E. 2d 210, 213 (1974). There is sufficient evidence from which the jury could find that Overton had

Morrow v. Kings Department Stores

the *apparent authority* to bind defendant by his signature on the 26 February 1973 letter. Therefore, we find that the 26 February 1973 letter is a sufficient memorandum of lease for the liquor store under G.S. 22-2 upon which defendant is bound since it states the essentials of a lease with the aid of parol evidence and it complies with the requirements of the statute of frauds. Defendant's fifth argument has no merit.

Defendant brings forward other arguments which have been addressed in the foregoing discussion. Its remaining assignments of error are also without merit, not warranting further discussion in this opinion.

For these reasons, the judgment below is

Affirmed.

Judge BECTON concurs.

Judge HEDRICK concurs in result.