BILLY R. SATTERFIELD v. SAM PAPPAS AND CLAIRE R. PAPPAS

No. 8221DC1202

(Filed 6 March 1984)

**Frauds, Statute of § 8— sufficiency of written memorandum of oral lease**

Two written leases, each of which had been signed by one of the parties, and other correspondence between the parties constituted a sufficient written memorandum of an oral agreement between the parties to give rise to an enforceable lease under G.S. 22-2 where the evidence showed that plaintiff lessor and defendant lessee reached an oral agreement upon the essential elements of a new lease for space used by defendant for a restaurant in plaintiff's shopping center, including the term of the lease, the rental price, and the property to be leased, and upon such non-essential lease provisions such as insurance, entry, use and assignment; the two written leases contained identical provisions on the essential elements; and the points of disagreement between the two written leases concerned only "boiler plate" language and non-essential terms to be included in the lease.

APPEAL by defendants from *Tash, Judge*. Judgment entered 14 June 1982 in Superior Court, FORSYTH County. Heard in the Court of Appeals 30 September 1982.

Plaintiff, Billy R. Satterfield, filed this action for summary ejectment against defendants Sam Pappas and his former wife, Claire R. Pappas on 7 April 1982. The case was heard before the Magistrate of Forsyth County and judgment for the summary ejectment of Pappas was rendered on 19 April 1982. Pappas gave notice of appeal pursuant to G.S. 7A-228 and filed an answer to Satterfield's original complaint on 23 April 1982.

A jury was empanelled and trial held before Judge Tash. Both parties presented evidence. Defendants' motion for directed verdict at the close of the plaintiff's evidence and at the close of

all the evidence was denied. The trial court ruled in favor of the plaintiff's motion for directed verdict at the close of all the evidence. Defendants appeal from the judgment entered upon the directed verdict for plaintiff at the close of all the evidence.

*Hutchins, Tyndall, Doughton & Moore, by Thomas W. Moore, Jr. and Richmond W. Rucker, for defendant appellants.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by Norwood Robinson, Gray Robinson and Robert E. Price, Jr., for plaintiff appellee.*

JOHNSON, Judge.

The plaintiff landlord, Billy R. Satterfield (Satterfield) brought this action against the defendant tenants, Sam Pappas and his former wife Claire R. Pappas (Pappas), seeking summary ejectment of Pappas on the grounds that the leases under which Pappas was renting space for his restaurant in Satterfield's shopping center had expired as of December, 1979 and October, 1981, respectively, leaving Pappas in the position of holdover tenant. In his answer, Pappas defended against summary ejectment on the grounds that he has a valid and existing lease to the premises for a term of 10 years ending in June, 1989. The issues presented by defendants' appeal are whether the trial court had jurisdiction over the subject matter of this action pursuant to G.S. 42-26 and whether the defendant presented sufficient evidence to demonstrate the existence of an enforceable lease agreement between the parties. For the reasons set forth below, we hold that the trial court had jurisdiction over the subject matter, but that the court erred in granting plaintiff's motion for directed verdict, and in denying defendants' motion for directed verdict.

The summary ejectment statute, G.S. 42-26 provides in part:

Any tenant or lessee . . . who holds over and continues in possession of the demised premises, or any part thereof, without the permission of the landlord, and after demand made for surrender, may be removed from the premises in the manner hereinafter prescribed in any of the following cases:

(1) When a tenant in possession of real estate holds over after his term has expired.

In the present case, Pappas entered a portion of the premises under two different written leases. The first written lease encompassed approximately 6,500 square feet of space in the Club Haven Shopping Center, Winston-Salem, North Carolina for a term of ten years ending 31 December 1979, at a monthly rental of $900.00. The second lease encompassed 750 square feet adjoining the other premises for a term of ten years ending 31 October 1981, for a monthly rental of $300.00. The parties also agreed that beginning in the late summer or early fall of 1979 Pappas might occupy additional adjoining space. It is undisputed that each of the original written leases expired according to its terms; that Pappas remained in possession of all three parcels; and that Satterfield may demand on Pappas to vacate the premises on or before 31 March 1982.

It was plaintiff's contention that he permitted defendant to remain on the premises pending negotiation of a new lease and that no new lease was, in fact, agreed upon by the parties and that no memorandum reflecting such an agreement was signed by plaintiff. Defendant appears to argue that because he continued to pay and plaintiff accepted rent, and further because a new lease was, in fact, entered into and a memorandum thereof signed by plaintiff, that the trial court lacked jurisdiction to hear this action under the summary ejection statute.

It is obvious from the complaint that had plaintiff succeeded in proving that no new lease had been entered into and that defendant was allowed to remain in possession only pending negotiations on a new lease, summary ejection would have been the appropriate remedy. *See Gurtis v. City of Sanford*, 18 N.C. App. 543, 197 S.E. 2d 584 (1973). That defendant alleges and is ultimately able to present a defense to such an action does not destroy the jurisdiction of the trial court over the subject matter. Whether defendant was in fact a holdover tenant was an issue to be decided at trial. Therefore, defendant's argument that there was no subject matter jurisdiction because there was no holdover situation is without merit.

A motion for a directed verdict pursuant to Rule 50(a) presents the question of whether the evidence presented is sufficient to carry the case to the jury. In passing on this motion, the trial judge must consider the evidence in the light most favorable

to the non-movant, and conflicts in the evidence together with inferences which may be drawn from it must be resolved in favor of the non-movant. The motion may be granted only if the evidence is insufficient to justify a verdict for the non-movant as a matter of law. *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979); *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

The evidence regarding the parties' agreement upon a new lease is as follows: Pappas occupied the premises beginning in 1969 under the lease agreements mentioned above until the Spring of 1979. At that time Pappas asked Satterfield if he could lease an additional adjoining space, which was then occupied by a barbershop, so that he could expand his restaurant operation. In about May of 1979, the parties discussed and agreed to put both parcels of land covered by the two original leases into one lease and to include the third parcel (barbershop space) into that lease. Pappas and Satterfield negotiated a rent increase, in part, to cover expenses Satterfield incurred bringing the property into the city limits so that Pappas could obtain a liquor-by-the drink permit for his restaurant.

On cross-examination, Satterfield testified that prior to turning the matter over to their respective representatives and lawyers to work out the details, Pappas and he reached an agreement on a lease incorporating all three parcels.

> Mr. Pappas and I had agreed on the space to be leased, the original space, the wig shop and the barber shop, everything inside the building. We agreed on a price and the ten year term with a five year option to renew.

Satterfield then gave the information to his business associate and agent, Buddy Norwood. Donald R. Billings, an attorney, was handling the negotiations on the new lease for Pappas.

On 24 May 1979, Billings sent a proposed lease to Satterfield, leasing all three parcels to Pappas at a monthly rental of $2,000.00 for a term of 10 years, with an option to renew for 5 years at an increased rental based on the cost of living index, not to exceed 20%. The proposed lease left out the exact dates of the term and the exact space to be leased. The proposed lease also specified that certain alterations would be built by and made at the expense of the lessor.

On 15 June 1979, Satterfield's agent Buddy Norwood sent a letter to Pappas' attorney suggesting certain changes and provisions. The letter reads as follows:

> I will attempt in this letter to incorporate your letter of May 24, 1979, your draft of the lease, our telephone conversations, and your conversations with Billy Satterfield.
>
> 1. If you want a survey for Exhibit "A" [diagram of space to be leased] this would include only the building, not any specific portion of the parking lot.
>
> 2. *Term*: Should be July 1, 1979 to June 30, 1989.
>
> 3. *Rental*: Should be changed to say the Barber Shop space will be given to you on September 1, 1979 and the rent will be $1,800.00 for the first two months and $2,000.00 for the next 118 months.
>
> Let's add: "federal cost of living index—all items—using July 1, 1978 to July 1, 1979 [sic] as the base period."
>
> 4. *Fixtures*: Lessor to have prior written approval of all signs. Lessor to be responsible for air conditioner and heating compressors only.
>
> 5. *Alterations*: Add—no alterations to roof without lessor approval—meaning no holes cut for vents, etc. *Lessee* will build at his expense with *lessors* written approval of plans any and all alterations inside or out.
>
> 2nd Paragraph—omit—"except as hereinbefore stated" and add all alterations [shall be made at the expense of the lessee] . . .

The letter concluded that "we want to make this lease effective July 1, 1979 with the additional space effective September 1, 1979." Also, the legal lessee was identified as "Billy R. Satterfield." The letter was signed by "Ballard [Buddy] G. Norwood."

Pappas' attorney then incorporated these suggestions, with one or two exceptions, along with Norwood's exhibit of the space to be leased in a new proposed lease which was later to be signed by the defendant, Sam Pappas, and was sent to plaintiff's agent Norwood in September of 1979. (Hereafter "the Pappas lease.")

This lease essentially duplicated the lease proposed by defendant in May of 1979, except for the changes suggested by Norwood. The Pappas lease also contained a provision regarding non-exclusive parking privileges, did not provide *for written* approval of the lessor on alterations, although it did provide for approval by the lessor, and specified that the rental would be $1,800.00 per month for the first three months and $2,000.00 per month for the remainder of the term.

The next step in this series of negotiations was a lease drafted by plaintiff's attorney, G. Emmett McCall, signed by the plaintiff, Billy Satterfield, and sent to Attorney Billings on 17 October 1979. (Hereafter "the Satterfield lease.") The Satterfield lease duplicates the Pappas lease in the following respects:

(1) *Lessor*—Billy R. Satterfield and wife, Millie Satterfield;

(2) *Lessee*—Sam Pappas;

(3) *Term*—July 1, 1979 to June 30, 1989 with an option to renew for five years upon written notice from Lessee at least 90 days prior to the end of the term;

(4) *Rental*—$1,800.00 per month for the first three months and $2,000.00 per month for the remainder of the term. If Lessee renews for five years, rent will be increased according to the percentage rate increase in the federal cost of living index from July 1, 1978 to July 1, 1989, not exceeding 20%.

(5) *Property to be leased*—A 7,000 square foot area depicted in identical exhibits attached to the proposed leases.

(6) *Additional provisions*—The Satterfield and Pappas leases contain essentially the same provisions concerning use, payment of utilities, fire and liability insurance, default by the Lessee, termination of the lease, entry and assignment.

Attorney Billings testified that Pappas refused to sign the Satterfield lease because it contained "numerous boiler-plate clauses" which defendant found unacceptable. Billings and McCall then engaged in a series of negotiations over the boilerplate language. Meanwhile, Satterfield refused to sign the Pappas lease because he insisted that his lease contain "the right protection for

the landlord." Satterfield testified that, "I called Mr. Billings and told him I wouldn't sign his lease, I was tired of paying lawyers and why can't I get my own lease signed." The Pappas lease differed from the Satterfield lease primarily in its shorter length, in the omission of the need for *written* approval from the lessor for alterations, and in the inclusion of a provision concerning parking. Mr. Satterfield testified that it was essential to him that a lease contain a parking provision, despite the fact that the lease prepared by his own attorney failed to contain such a provision. Mr. Billings testified that he included the parking provision as an interpretation of Paragraph 1 in Norwood's letter.

On cross-examination, Satterfield testified that as of 1 July 1979, Mr. Pappas "took over the barber shop space and began paying rent *under the terms of this agreement . . . Sam and I agreed that as of July 1, the rent increased in accordance with Paragraph 3 of Mr. Norwood's letter.*" Further, that since 1 July 1979, Mr. Pappas has been paying, and Mr. Satterfield has been accepting, rent at the rate of $2,000.00 per month for the premises. However, Mr. Satterfield also testified that the agreement between the parties for a rent increase was separate from their negotiations for a new lease.

Mr. Billings testified that sometime between the first of July and the first of September, 1979, Mr. Pappas began renovating the premises by taking out the partition and three walls that created the barbershop to make a storage area for performers. The renovations cost Pappas $100,000.00 and the work was completed, without the written approval of Satterfield, by 17 October 1979.

Eventually, Billings realized that McCall would not take the boilerplate language out of the lease and he decided to have defendant sign the Pappas lease instead. Mr. Pappas did so, and Billings mailed the signed Pappas lease back to McCall for Satterfield to sign in January, 1980. Satterfield never signed the Pappas lease and Pappas never signed the Satterfield lease. Over 2 years later, on 31 March 1982, Satterfield gave Pappas notice to vacate the premises, claiming that there was no lease between the parties.

The central issue in defendant's appeal is whether defendant offered evidence from which the jury might find that the parties

entered into an oral lease agreement during the course of their negotiations in the spring and summer of 1979, that is evidenced by a writing or memorandum sufficient to satisfy the Statute of Frauds, G.S. 22-2. We conclude that sufficient evidence of such a lease agreement was presented to warrant entry of a directed verdict in defendant's favor.

A lease is a contract for valuable consideration whereby one agrees to let another have the occupation and profits of realty for a definite period of time. The essentials of a lease creating an estate for years are (1) the names of the parties (lessor and lessee); (2) a description of the demised realty; (3) a statement of the term of the lease; and (4) the rent or other consideration. *Helicopter Corp. v. Realty Co.*, 263 N.C. 139, 139 S.E. 2d 362 (1964); *Stallings v. Purvis*, 42 N.C. App. 690, 257 S.E. 2d 664 (1979).

The testimony of Satterfield himself established that in May or June of 1979, Billy Satterfield as lessor and Sam Pappas as lessee reached an oral agreement upon a new lease incorporating the three parcels in the Club Haven Shopping Center at a monthly rental of $2,000.00 for a term of ten years, effective 1 July 1979, with a five year option to renew at an increased rent indexed to the cost of living index, with a maximum increase of 20%.

G.S. 22-2 provides that all leases "exceeding in duration three years from the making thereof, shall be void unless said contract, or some memorandum or note thereof, be put in writing and signed by the party to be charged therewith, or by some other person by him thereto lawfully authorized." If all essential elements of a contract to convey or lease land have been agreed upon by the parties and are contained in some writing or memoranda, signed by the party to be charged or his authorized agent, then there can still be a valid, binding contract to convey or lease land, even if there is no agreement on other non-essential terms. *Yaggy v. B.V.D. Co.*, 7 N.C. App. 590, 173 S.E. 2d 496 (1970). Furthermore, an enforceable lease or conveyance of land need not be set out in a single instrument, but may arise from a series of separate but related letters or other documents signed by the person to be charged or his authorized agent. *Hines v. Tripp*, 263 N.C. 470, 139 S.E. 2d 545 (1965).

In order for the oral agreement between Satterfield and Pappas to give rise to an enforceable lease between the parties, defendant had the burden of proving that one or all of the signed documents sent between the parties during the course of their negotiations were sufficient to satisfy G.S. 22-2. We conclude as a matter of law that the two lease agreements and other correspondence passing between the parties, and in particular the 24 May 1979 letter of Norwood, taken together, are sufficient written evidence of a contract or agreement between the parties to give rise to an enforceable lease between the parties.

The lease signed by Pappas and the lease signed by the Satterfields are in total agreement on the essential elements of the lessor and lessee, the term of the lease, the rental price, the property to be leased, as well as on many other non-essential lease provisions such as insurance, entry, use and assignment. The two leases are related documents, as are the Billings and Norwood letters, and all are signed by the parties to be charged or their agents. The points of disagreement between the lawyers and agents of the parties concerned primarily the "boilerplate" language to be included in the new lease and did not involve any of the essential elements of the lease. The other differences between the documents were also as to non-essential terms, many of which were effectively rendered moot by the subsequent actions of the parties.

> The fact that in the present case the attorneys for the parties were engaged in drafting and were attempting to agree on the language of an instrument which would spell out in detail not only the essential but also the subordinate features of the agreement, does not compel the conclusion that the minds of the parties had never met upon those features.

*Yaggy v. B.V.D. Co., supra* at 600, 173 S.E. 2d at 503. As long as there is a writing or memorandum containing all of the essential terms of the lease, "later negotiations regarding subordinate features of the [lease] *do not negate the existence of a contract.*" *Hurdle v. White*, 34 N.C. App. 644, 651, 239 S.E. 2d 589, 594 (1977), *cert. denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978).

Plaintiff's argument that no new lease came into effect because neither party ever accepted the written proposals or offers of the other fails to make the crucial distinction between "a

condition which goes to the making of a contract and a statement relating only to its ultimate performance or execution." *Carver v. Britt*, 241 N.C. 538, 540, 85 S.E. 2d 888, 890 (1955). In *Carver* the court held that where the offer is squarely accepted, the addition of a statement in the acceptance relating to the ultimate performance of the contract does not make the acceptance conditional so as to prevent the formation of the contract. The situation at bar is essentially no different. Satterfield admitted that he and Pappas reached an oral agreement upon the essential elements of a new lease for the subject premises. The two written leases, each signed by the respective principal, contained identical provisions on the essential elements, reflecting the agreement previously reached by the two principals. The subsequent disagreement over boilerplate language that arose between the attorneys for the parties during the drafting of the instrument may in no way be said to have prevented formation of the contract, and in all other respects the series of related documents that comprise the signed memorandum of the oral agreement were sufficient to satisfy the requirements of G.S. 22-2. Therefore, defendant offered sufficient evidence to prove that a valid and enforceable lease existed between the parties as a matter of law and the trial court erred by failing to grant defendant's motion for a directed verdict at the close of all the evidence. Accordingly, the judgment entered upon the directed verdict in plaintiff's favor must be reversed and the case remanded for entry of a directed verdict in favor of defendant on plaintiff's claim for summary ejectment.

Reversed and remanded.

Judges BECTON and BRASWELL concur.